THE STATE, EX REL. OLIVER TOWNSEND, V. JOHN E. HILL, COUNTY CLERK GAGE COUNTY.

1. **Election:** CANVASSERS: THEIR DUTIES: MANDAMUS. The alternative writ contained the following charge: "That the votes polled in the several precincts were returned to you by the judges thereof, and that you, as clerk of said county, calling to your aid two electors of said county, pretended to canvass and count the votes cast at the said election, * * * and with the fraudulent purpose of declaring that the said proposition had been carried by the votes of the electors of the said county, and without any legal cause whatever, you rejected the vote of Paddock precinct, and neglected and refused to count the same. * * *" In his answer the respondent, the county clerk, set up a copy of the record of said canvass, in which he says: "And we further certify that there was no le-

gal returns of votes from the precinct of Paddock, in said county, for the reason that there is no evidence that all the judges and clerks of said election in Paddock precinct were qualified, as provided by law, and for the reason that it appears that one Thomas W. Wing was not qualified to sit as a judge at said election in said precinct, and for reasons not herein enumerated." *Held,* That the said canvassers had no power to inquire into the qualifications of the judges or clerks of the election, nor to reject or throw out returns actually received from any precinct for any cause whatever. And that the said clerk would be compelled by mandamus to complete the said canvass. *Held,* also, that if sections 64 and following of an act entitled " An act to provide a general election law, the procedure relative to contested elections and the filling of vacancies in office," approved March 1, 1879 (Laws, p. 240), be held to apply to cases of this character, and be further held to be a complete remedy at law, that said provisions could only apply to a case where the relator has an opportunity to avail himself of the benefit of the said act, with all of its privileges as to time.

ORIGINAL application for mandamus.

*T. M. Marquett,* for the relator.

*A. J. Poppleton,* for the respondent.

COBB, J.

The question in this case arises upon the return of the respondent to the alternative writ of mandamus. The said alternative writ contains the following charge, after the setting out of the submission of the question of the issuing and donating of the county bonds to the railroad company, and the holding of the election, that at the said election there were cast two thousand two hundred and thirty-eight votes, of which number fourteen hundred and forty-eight were cast in favor of the proposition * * * and seven hundred and ninety were cast against the proposition. " That the votes polled in the several precincts were returned to you

by the judges thereof, and that you as clerk of said county, calling to your aid two electors of said county, pretended to canvass and count the votes cast at said election, * * * * and with the fraudulent purpose of declaring that said proposition had been carried by the votes of the electors of said county, and without any legal cause whatever, you rejected the votes of Paddock precinct, and neglected and refused to count the same as you were by the law and your official duty required to do, and that you determined the whole number of votes cast for said proposition to be 1,401, and 679 against, instead of the true vote as above stated, thereby making a false record of the votes cast at said election, whereby it would appear that said proposition had been carried, when in fact it was defeated."

To this writ the respondent made return and answer, in which, among other things, he says: "And respondent further says, that the annexed paper marked exhibit "A" is a true and correct copy of the record of said canvass of votes in said county, which respondent prays may be taken as a part of his answer or return in this cause; and that said canvass was completed," etc. By reference to the said exhibit "A" we find the following as a part of the said certificate of canvass: "And we further certify that there are no legal returns of votes from the precinct of Paddock, in said county, for the reason that there is no evidence that all the judges and clerks of said election in Paddock precinct were qualified as provided by law, and for the reason that it appears that one Thomas W. Wing was not qualified to sit as a judge at said election in said precinct, and for reasons not herein enumerated."

By reference to sec. 1, chap. 35, and sec. 20, chap. 13, of General Statutes, it will be seen that the election,

return, and canvass of votes of an election, on the subject of the issuing of county bonds to railroad companies or other works of internal improvements, are to be conducted in the same manner as required "at each general election." And by reference to secs. 17 and 18, chap. 20, it will be seen that the duty of the county clerk at "each general election" is as follows: "Sec. 17. Upon the reception of the returns of each election precinct by the county clerk, directed to him as hereinbefore provided, and within six days after the closing of the polls, he, together with two disinterested electors of the county, to be chosen by himself, shall open said returns and make complete abstracts of the votes cast for each several office at said election."

"Sec. 18. After such abstract is made and the votes counted and compared, the person or persons having the highest number of votes for each of the offices * * * voted for at such election, shall be declared duly elected, and the county clerk shall issue a certificate accordingly."

Reading these sections of the statute without reference to authorities or construction, it seems quite clear that it is the duty of the clerk and his two assistants, who are usually—though not very accurately—called the board of canvassers; to tabulate the votes contained in each one of the returns, or in other words, the returns received from each of the precincts, and in ascertaining the result to add up the votes given for each candidate respectively, as returned from each precinct, from which a return of votes has been in fact received. And when we come to look into the authorities and examine the adjudicated cases, we find that the courts, with almost entire unanimity, agree in defining the duties of the canvassers under similar statutes as ministerial, consisting in tabulating and

adding up the votes and declaring the result, and in denying to the said board any judicial or discretionary power, or any right to reject or throw out votes which have been in fact returned, for any cause whatever.

In the case of *The State, ex rel. Moore, v. Howard*, not reported, this court held that where the returns from one of the precincts contained no figures showing the number of votes cast for a point to which it was proposed to remove the county seat, but only the tally sheet of votes under appropriate heads, it was the duty of the board to canvass and allow such votes; and after the said board had adjourned, issued a peremptory mandamus to the clerk to complete such canvass accordingly.

In the case of *Hagge v. Wiseman*, decided at the present term, this court held that a canvassing board possesses no judicial powers, and cannot go behind the returns.

Judge McCrary, in his valuable work on the American law of elections, has collated the cases, showing that the courts of last resort of fifteen of the states of the Union substantially unite in denying to boards of canvassers any discretionary or judicial power. *Dishon v. Smith*, 10 Iowa, 212. *Attorney General v. Barstow*, 4 Wis., 749. *People v. Van Cleve*, 1 Mich., 362. *Thompson, Circuit Judge*, 9 Ala., 338. *State v. Steers*, 44 Mo., 228. *Bacon v. York County*, 26 Me., 491. *Taylor v. Taylor*, 10 Minn., 107. *Morgan v. Quackenbush*, 22 Barb., 72.

From a consideration of these cases, as well as the provisions of our statute above quoted, I reach the conclusion that the canvassers (in this case) had no right or power to reject the returns from Paddock precinct, either for the causes named in said exhibit "A" or for any cause whatever, and that by reason

of such rejection and failure to count the votes of said Paddock precinct the said canvass remains incomplete in law.

In a late case quite in point in the supreme court of Kansas, Judge Brewster, in delivering the opinion of the court, uses the following language: "It is the duty of canvassers to canvass all of the returns, and they as truly fail to discharge this duty by canvassing only a part and refusing to canvass the others as by refusing to canvass any. And it is settled by abundant authority that where the board refuses to canvass any of the votes it may be compelled to do so by mandamus, and this though the board has adjourned *sine die. Hagerty v. Harrold*, 13 Kan., 367, is a case in point. The canvass is a ministerial act, and part performance is no more a discharge of the duty enjoined than no performance. * * The adjournment of the board does not deprive the court of the power to compel it to act any more than the adjournment of a term of the district court would prevent this court from compelling by mandamus the signing a bill of exceptions by the judge of the court, which had been tendered to him before the adjournment." *Lewis v. Commis. of Marshall Co.*, 16 Kan., 102. See also *State of Iowa v. County Judge*, 7 Iowa, 186.

The point was made at the hearing that by and under sections 64 and following of an act entitled "An act to provide a general election law, the procedure relative to contested elections and the filling of vacancies in office," approved March 1, 1879 (Laws, p. 240), the relator has a remedy at law, and hence cannot be allowed the remedy by mandamus. I have considered this point, and it is certainly entitled to great weight. But I do not think that it can apply to this case. The act in question by its own terms went into effect September 1, 1879. The canvass of the votes

in question took place August 17, 1879. The election law, sec. 81, provides that: "The contestant shall file in the proper court, within twenty days after the votes are canvassed, a complaint.   *   *   *   The contestant must also file a bond."

It will thus be seen that but a few days elapsed after the taking effect of the said law until the relator was barred of its benefits as applied to this case, by reason of the expiration of twenty days from the date of the canvass.   As the act itself gives twenty days in which a party may avail himself of its benefits, I take it as the legislative opinion that that is a necessary or reasonable time for the purpose of taking the steps contemplated by the act, and that the relator cannot be deprived of his remedy by mandamus, he never having had an opportunity to avail himself of the benefit of the act in question, with all of its privileges as to time.   So that, without passing upon the main point as to whether the provisions of the law in question will in a proper case take the place of proceedings by mandamus, I am of the opinion it cannot in this case.

It therefore follows that a peremptory writ of mandamus must be granted, as prayed.

MAXWELL, CH. J., concurs.   LAKE, J., dissents.