Johnson, J.,
dissenting. The motion to strike out certain specific allegations contained in the amended petition, showing that certain election returns were not legal returns, and therefore should not be counted, the demurrer to the same petition, and the motion to quash the alternative writ, made by the defendant in mandamus, were each based upon the same ground, namely: that the canvassing board is the sole judge of what are legal returns, and the circuit court have no power or jurisdiction to control such board as to their duty in the premises.
The overruling of each of these motions and the demurrer were excepted to by the defendants, plaintiffs in error here. The claim is, that each house of the general assembly is the judge of the election, returns, and qualifications of its members, and the statute prescribing the mode of making such a contest, furnishes a plain and adequate remedy at law for all irregularities, whether occurring by fraud, or misconduct, or mistake of the board, or of the judges of the election. On the other hand, relators con *682 ceded that the board could not go behind the face of the properly authenticated returns, nor hear evidence aliunde, nor take cognizance of irregularities or frauds occurring at the election, not apparent from the inspection of the returns themselves.
If such returns are genuine, and are in due form, and properly authenticated, it is the duty of the board to canvass the same.
The first question I propose to consider, is whether the court could control the board in its action, where by inspection of the face of the returns they appeared not to be legal returns, duly authenticated, or where, on their face, fraud and forgery were apparent to an ordinary mind, imbued with the desire to do right. It would seem there could be but one answer to this question. But it is asserted, with unusual vigor aud zeal, that, if these returns come to the clerk, under seal from one of the judges of the election, they must be counted, though it is evident from a bare inspection of them that they are false, forged, and fraudulent, and that the court is powerless to prevent it, though the board knows they are stained with crime, and although it is a fraud upon every honest voter.
This is a monstrous doctrine; it subverts the dearest rights of the citizen by destroying all the power of an honest vote; it permits the clerk, to whom is given the selection of the justices, to assist him in making the canvass, to exercise absolute control. This board may be actuated by a partisan desire to count in their friends. Yet we are told that the only remedy is by contest.
In political organizations, where, if the contest is successful, it would change the complexion of the body, it has seldom, if ever, been that such a contest has been successful, when the control of the body is thereby changed.
It is a fundamental principle that every citizen and every public officer, however high his grade, is amenable to judicial control. It was but a few years since that the governor-of this great state was arrested by the sheriff of au adjoining county and compelled to stand at the bar of the court, *683 and plead as a common criminal. He did not claim nor could he claim exemption from obedience to the mandates of the court. Less than five years ago this court issued its alternative writ of mandamus against the governor of Ohio, and the secretary of state, acting as a canvassing board, commanding them to make the canvass for a certain office in a particular way, or show cause why a peremptory mandamus should not issue. Neither the governor of the state, nor the secretary of state, nor the attorney-general, who represented them in court, presumed to claim that these high officers were exempt from the control of this court because they were members of a canvassing board. State ex rel. Campbell v. Foster, 38 Ohio St. 599.
It has been reserved for these modern times, to establish as a rule of law, that there is one man in Hamilton county, who is above all law and all control; who can count in or count out at his imperial will, and grant certificates of election, and the courts are powerless to direct him.
There is no remedy at law for a candidate who is de. prived of his certificate of election. His right to this certificate if he be legally elected is clear. A contest is to try the title to the office. Mandamus is the remedy to determine the title to the certificate.
The certificate makes a prima facie ease. It is to be given to that candidate shown to be elected by a canvass of the legal returns.
On a contest, evidence aliunde is admissible to show who in fact is duly elected.
In support of the claim made, that a canvassing board is, while making a canvass or after it has been made, absolute in its power and can not be controlled by the court, several Ohio cases are cited. Let us examine them.
Ingerson v. Berry, 14 Ohio St. 315, is much relied on. There the canvassing board had in good faith (an element here wanting) rejected part of the returns and declared one Marlow duly elected sheriff, and issued to him a certificate to that effect.
Had the rejected returns been counted for Ingerson, he *684 ■would have been entitled to the certificate. He gave notice of contest and perfected his appeal to the court of common pleas. Thereby that court acquired jurisdiction to hear and determine the contest. While this appeal was' pending, he applied for a peremptory writ of mandamus to require the board to discharge its duty by canvassing the rejected returns, and declare the result in his favor. The court, per Scott, J., after stating the facts, says: “ I see nothing in the intrinsic nature of the duty which the law in this case enjoined upon the defendant (the canvassing board), nor in the character of his office or station, to prevent the enforcement of its proper performance by mandamus.”
The court then holds that by relator’s appeal: “The whole subject-matter is withdrawn from the sphere of the clerk and justice’s statutory power of action, and that they become functi officio.”
It was further held that inasmuch as Ingerson had by his appeal conferred jurisdiction upon the court of common, pleas, and withdrawn the case from the canvassing board, he lost his right to compel that board by mandamus to re-convene and re-canvass the vote, in order to furnish him with a certificate to be used in his contest or otherwise.
It is a matter of astonishment that this case should be cited by plaintiff in error. In- holding that Ingerson had lost his right to a mandamus by perfecting his appeal in a contest is a clear acknowledgment that he had such right when not so lost.
It is true, some general remarks found in the opinion as to the remedy on contest may be construed in favor of plaintiff in error, but when considered in the light of the facts, this is an authority only for the decision expressed in the syllabus.
The next case is The State ex rel. v. Marlow, 15 Ohio St. 114, which is another phase of the same controversy. That was a quo warranto in the district court to oust Marlow from the office of sheriff, because Ingerson was duly elected by a majority of legal votes. Two defenses are interposed; if either was good the proceeding failed.
*685 First. It was claimed there were irregularities in obtaining jurisdiction by quo warranto.
Second. That quo xoarranto was not a proper remedy for determining the title to an office, the statute providing a special and exclusive remedy by contest. The court so held and dismissed the petition. The sole question was whether since the adoption of the constitution, section 21, article 2, which provided that “ The general assembly shall determine by law by what authority and in what manner the trial of contested elections shall be conducted,” and after the legislature had prescribed a specific remedy by contest, that remedy was exclusive of the common law remedy by quo warranto.
This provision for a contest was to determine the right and title to the office, and not the right and title to a certificate. There is nothing in the syllabus in conflict with the right of the court to compel a canvassing board to correctly canvass the returns and declare the result.
It is entirely compatible with the opinion by Judge Scott, that there is nothing in the nature of the duties of the canvassing board “ to prevent their enforcement or proper performance by mandamus.”
The State ex rel. Wetmore v. Stewart, 26 Ohio St. 216, is an authority in favor of the jurisdiction of the circuit court over a canvassing board, iustead of against it. That was an application for peremptory mandamus, to compel the board to reeanvass the votes and give the relator the certificate of his election as an infirmary director.
No one doubted the power of the court to grant the relief prayed for. The case was defended on two grounds : 1. It was claimed that the law applicable to contested election cases applied, and therefore the relator had a plain and adequate remedy at law, though this office was not specially named in the statute. 2. Petition did not state facts sufficient to authorize a peremptory suit. The court held: 1. That the statute did apply, and a candidate for infimary director could contest. ”2. That upon the facts stated and the presumption arising from the pleadings, it appeared *686 that the board had completed its labors and declared the result against the relator; and the remedy thereafter is by contest. “Therefore, the statute having provided an adequate and complete remedy by contest on appeal, of which the relator neglected to avail himself at the proper time, he is not entitled now to a mandamus to redress the grievances of which he complains.”
And the syllabus says: “Mandamus will not lie to compel the clerk and justices to re-canvass the poll-books returned, and furnish the relator with evidence upon which to contest.”
This decision is to the effect that after the board has concluded its duties and declared the result, it becomes functus officio. His remedy is by contest, and the court will not afterward compel the board to re-assemble and re-canvass the returns. The phrase is: “ He is not entitled now to a mandamus,” having neglected to avail himself, by contest, upon°appeal within time.
This is a strong implication that mandamus would lie if sought before the board had concluded its labors.
Phelps v. Schroder, 26 Ohio St. 549,.has no relation to the power of the court to issue mandamus.
It was a petition in error to review the decision in the court below, on a contested election case; it relates solely to such a contest. It in substance holds that the canvassing board can not, if the returns are regular in form and substance, go behind them though there be fraud in the manner of conducting the election. This has been conceded in this case from the first, but it does not hold that where returns upon their face are manifestly fraudulent, or are not regular in form and substance, they can not reject them. The majority of the court in the present case hold, that though they are “ not regular in form and substance,” and though fraud and forgei’y are apparent on the face of the returns evident to any fair-minded man, yet the board may shut its eyes and itself become criminal by counting the fruits of the fraud and forgery, and no court can control it.
*687 The next case is the The State ex rel. v. Foster, 38 Ohio St. 599. Campbell, who was the relator in that case, sought to compel the state canvassing board to reassemble and correctly ascertain the vote for member of congress.
Campbell and Henry L. Morey were opposing candidates for congress from the seventh congressional district. Butler, C-reene, and Warren counties had certified the votes for “Henry L. Morey” to be 10,984, while Clermont county had certified the vote for “ H. L. Morey.” Campbell applied for a peremptory mandamus to compel the board in aggregating the votes to exclude the votes for H. L. Morey; this would have elected Campbell. An alternative writ was issued commanding the board to exclude said vote for H. L. Morey, or show cause why it should not be done.
The board was represented by the attorney-general, but it did not occur to him, or to the distinguished members of the board, that a canvassing board was not amenable to the power of the court to control its action, although the constitution of the United States vested in each house of congress exclusive jurisdiction to determine upon contest, who was, and who was not elected. It was reserved for this case to make that discovery. The governor and secretary of state loyally yielded to the mandate of the court. It was held that making the canvass was purely ministerial in its nature, but the performance of ministerial duties requires the exercise of intelligence, sense, and judgment. That the person so elected was to be determined from the returns before the board, and if the produce reasonable conviction of what the will of the people was, it should have its legitimate effect, and if H. L. Morey and Henry L. Morey designate the same person, as appears from the returns, read in the light of such public acts of notoriety connected with elections, as every one takes notice of, the defendants have performed their duty correctly in giving the certificate to Henry L. Morey. Here the'board and this court assert the doctrine that while the face of the returns, “ regular in form and substance,” should govern, yet they are to be read in the light of such facts of public notoriety as every one takes *688 notice of. It was not averred that H. .L. Morey and Henry L. Morey were different persons, but it was conceded, in argument that they were the same. Had it appeared that, they were different persons, then mandamus would lie to exclude the return from Clermont county.
The attempted explanation of The State exrel. v. Foster does not meet the point at issue; that is, has the court jurisdiction in mandamus to control a canvassing board1 This attempted explanation needs no reply, as it, in fact, concedes that The State ex rel. v. Foster was correctly decided. The only way to get rid of that case was to overrule it, as the following cases will show : People v. Hilliard, 29 Ill. 419; State v. Peacock, 19 N. W. Rep. 685 ; State v. Board, 36 Wis. 498; Luce v. Mayhew, 13 Gray, 83 ; Kisler v. Cameron, 39 Ind. 488; State v. Hodgeman County, 23 Kan. 264; State v. Lawrence, 3 Kan. 95; State v. McLin, 16 Fla. 17; State v. Garesche, 65 Mo. 480; Ex parte Strong, 20 Pick. 484; McCrary on Elections, secs. 320, 321, and 328 ; Pacheco v. Beck, 52 Cal. 3; Ellis v. County Com’rs., 2 Gray, 370; High Ex. Rem. secs. 60, 62 and 63; Cooley Const. Lim. *623; Commonwealth v. Eminger, 74 Pa. St. 479; Burke v. Supervisors, 4 W. Va. 371; State v. Hill, 10 Neb. 58; State v. Gibbs, 13 Fla. 55; Simon v. Durham, 10 Ore. 52; People v. Nordheim, 99 Ill. 553; State v. Berg, 76 Mo. 136.
In Clark v. McKenzie, 7 Bush, the court say: “In case the board refuses to issue the certificate of election to the person receiving the highest number of votes, and the relief by mandamus is withheld, the party aggrieved can have no-remedy whatever. Possibly he might contest the election of the person to whom the certificate was improperly issued, and recover the office. But the person receiving the highest-number of votes is entitled to the certificate of election, and this can not be awarded him by a contesting board. This-certificate has an intrinsic value. It is the evidence of the election of the person holding it to the office claimed. As it can not rightfully be withheld from the person receiving the highest number of votes, and as the law provides no other remedy by which it can be obtained, the circuit courts- *689 must have the power in all cases in which it is improperly refused to reach the officers composing the delinquent board by writ of mandamus.”
The State v. McLin, supra, the court in that case say: “Where a return is so irregular, false, or fraudulent, that the board is unable to determine the actual vote cast, the entire return, under the statute, should be rejected. . . ' . While this power to determine the falsity or irregularity is something more than simply counting or computing, still, such pow.er necessarily appertains to the discharge of every ministerial duty of this character. Where acts admitted to be done by the answer of the respondents in a proceeding by mandamus disclose erroneous action, and a failure to discharge a. ministerial duty imposed by law, and a consequent violation of right, this court has power to order a board of state canvassers to reassemble to discharge their duty. There is strictly no return to a peremptory writ of mandamus. It is to be obeyed.”
The syllabus of the case of’ The State v. Garesehe, supra: “In a proceeding by mandamus to compel a board of canvassers to count a vote as returned by the officers of election, when it appears that an alteration has been made in the return of the vote, but the canvassers do not know whether it was made before or after the return was delivered to them by the officers of election, the circuit court will inquire and determine what the return, as delivered, actually was, and will compel them to make the count accordingly.”
It is held in Ellis v. County Com’rs., supra, that “mandamus lies to the county commissioners to compel them to certify that the petitioner for the writ had a majority of the votes for county treasurer, although another candidate has been by them declared to be county treasurer, is in possession of the office.”
Chief Justice Shaw, one of the most learned judges of his time, says: “The questions are, whether, upon the return of the commissioners, and their record, as amended, *690 the prosecutor of this writ was entitled to a certificate and adjudication that he had the highest number of votes for county treasurer, and whether this question can be inquired into under this process [mandamus]. We are not now to consider whether the county commissioners can be required to place the prosecutor in the office; it may be that even if he should succeed and show that be ought to have been declared duly elected, he may be obliged to resort to his quo warranto in order to remove the present incumbent from the office before he can be restored. And we understand that an application for such a proceeding is now pending. But we are satisfied that it is competent for this court, on this writ, at the instance of the prosecutor, to inquire into the facts, and to require the county commissioners to do what it was plainly their duty to do, and what it is still in their power to do, to declare and certify, if such was the fact, that the prosecutor had the highest number of votés for the office, as one step, and one important step, towards obtaining his right, without which he could not obtain it.”
On this question, Simon v. Durham, supra, is in point: “ A board of canvassers, in the exercise of ministerial functions only, have no power, in making their canvass, to consider as election returns any paper not duly authenticated in the mode provided by the statute. An attempted canvass, in which the result declared is based upon papers not thus authenticated, may be treated as a nullity by the party injured, and unless the powers of the board have otherwise terminated, he is entitled to the writ of mandamus to compel them to reconvene and make a legitimate canvass of the proper returns. The writ should not be issued where it is properly made to appear that it would be useless and unavailing to the party applying for it, but the supreme court possessing, only appellate jurisdiction in such instances as the present, is confined to such questions as the record shows were determined by the court below.”
The judge, delivering the opinion, says, page 53: “It *691 is true the poll-books themselves did not contain the entries of the votes .in the columns under the names of the persons voted for, as required by section 23, title 2, chapter 14, of the general laws, nor did they contain the enumeration of the whole number cast for each person, as provided in section 26 of the same title; but these defects, we conceive, furnished no justification for the resort to the loose sheets spoken of in order to contradict and overturn the regular certificates and change the final result. We are disposed to concede the power of such a board, in the legitimate exercise of ministerial functions only, where these entries and enumerations are made in the poll-books themselves, and authenticated by the certificates of the judges and clerks of election, as provided by statute, to compare the number of entries in the appropriate column with the number certified to have been east for any candidate, and t'b correct any plain clerical error in computation which may thus b'e made to appear.”
Again, on page 54, it is said: “ We understand by this that the papers must bear upon their face substantially whatever the statute has prescribed for their authentication as such returns.” • •
In High on Extraordinary Legal Remedies, the author, in discussing the point as to the right to the certificate as distinguished from the right to the office, says :
“ See. 61. -The rule, as thus stated, in no manner conflicts with the principle heretofore discussed, that mandamus does not lie to compel admission to an office, since the courts have recognized a clear distinction between the two classes of cases. And while the granting of the writ to admit an applicant to an office would necessarily have the effect of determining the title thereto, no such effect can possibly attach to the writ when applied to compel the issuing of a certificate of election. The certificate of election is by no means conclusive as to the right to the office, but is merely evidence of a prima facie title thereto, upon which, it is true, the holder may afterward he entitled tq prosecute his right in another form of *692 proceeding, but which does not of itself carry title or determine the right. In all such, cases the courts proceed by mandamus upon the presumption that the counting of the votes and ascertaing the majorities, and then giving certificates of the result, are merely ministerial acts, and that the canvassers, from the nature of the case, can have no discretion in determining who is elected, this being a matter of mathematical calculation, or a conclusion to be drawn from the facts, and in no manner subject to the control of the officer upon those facts. The granting of the writ under such circumstances neither has the effect of turning out the actual incumbent of the office, nor of affecting his rights in any manner, since he is not before the court. It merely places the relator in a position to be enabled to assert his right, which he might otherwise not be enabled to do.”
Then follows section 62, which is in harmony with the authorities I have cited, that a certificate can be compelled to be issued, and that courts can compel the issuing of a second certificate, even although a first has been issued.
Citations without number to the same effect might be made, but I deem it unnecessary. Those already cited are so conclusive, and unanswerable, that no attempt has been made to explain them. It was wise that no such attempt has been made.
These authorities clearly establish the. proposition, that the circuit court should have overruled the several motions to quash, and the demurrer to the amended petition, on the ground that it had jurisdiction and power to control the canvassing board, and direct it as to what returns to canvass, where upon their face it appeared there was fraud and forgery, or that they were not in due and regular form.
This court has been unable to agree upon this question, being equally divided (Mcllvaine, C. J., absent), hence the court proceeded to consider the several specific allegations in the petition relating to'alarge number of the voting precincts. As to these, the majority has reversed the court *693 below, upon each and every point, on the ground that the canvassing board could not be controlled by the court, although, as they admit that there is, upon the face of the returns, or one of them at least, that of Precinct “A,” of the Fourth Ward, “strong suspicions of fraud.” Still, they say the board could not be controlled in canvassing. These frauds in Fourth Ward, A, are apparent from an inspection of the face of the returns. They not only furnished “a strong suspicion of fraud,” and forgery, but demonstrate, beyond all cavil or controversy, that it was false, fraudulent, and forged'. With all due respect, it seems to me that a bare inspection of this return will convince any man, be he lawyer or layman, that this return was conceived in fraud, born in iniquity, and nurtured to cheat the honest voters of Hamilton county‘by a majority of the canvassing board, which thereby made itself a co-conspirator in consummating the crime.
Take the case of Fourth Ward, “ A.” Let us see if this statement is borne out. The judges of the election had been furnished with blank forms for poll-books and tally sheets. On the first page is printed directions to the judges and clerks of election, with places for the signatures of the judges and clerks. The names of the judges there signed, as well as the names of the judges signed at the end of the poll-book, arefac similes of each other, and are all evidently signed by the same person, though there is some doubt whether one of the names is not written by some one else.
At the bottom of the poll-book, which ends with 654 names, the certificate required by law as to the number of electors is left blank. There was folded within the envelope three sheets of common cap papen, claimed to be a continuing of the polhbook, written by different persons, all of which, by comparison of handwriting, except one, was not an officer* of the election. Some of these names upon these loose sheets were evidently written by Whitehead,.the clerk. All the other names are, to my miud, manifestly the work of several strangers. There is no ref *694 erence to these sheets as a part- of the poll-hook. They begin the number 655, and end with 996. Thejr are not certified to as a continuation of the poll-book, nor signed as the law requires,'nor is there a certificate of the number of electors voting as the law requires. By these vital omissions they escape indictment for certifying to a false poll-book. On the back of these loose sheets there are figures in pencil showing that the Democratic candidates had received 726 votes, the Republican 48, and the Prohibition 22. In another place there are figures showing that the total number of votes polled was 796, Republican and Prohibition added together 70 — leaving the Democratic vote 726.' When we refer to the tallies, we find that they corresponded in number to the 796 as a total vote, and were afterward raised to 926, making the total vote 996.
The following is a facsimile of the forgery:

In addition to this, all the candidates for state and ■county offices on the Democratic ticket were in every instance raised from a 7 to a 9, as appears from above, in favor of the Democratic candidates, as well as upon the constitutional amendments. When first written they were all 726, and were afterward changed to 926, as shown above, except in the case of judge of the supreme court to fill a vacancy, treasurer of state, attorney-general, and member of the board of public works. The 726 in their cases still remain 726, and all the votes received by the Republicans was exactly 48, and those in the'case of the constitutional amendments are exactly 48 against, and 926 in favor. No scratching on either side l Most remarkable supposition, especially in the case of the constitutional amendments! Another noticeable fact is, that no vote whatever for the Prohibition candidates is given in the *695 proper column, though the tally sheet shows they received a number of votes.
. In the face of these facts the majority of the court hold that the board may count them, and the court can not interfere, because of the care they feel that the honest voter should not be disfranchised.
If I had the time I should like to state the defects and irregularities found upon the face of other returns. I give this merely as a sample case. Much has been said concerning the excess of tallies over poll-books, and the action of the circuit court thereon, is severely criticised.- The statute requires the board to cease counting when the number of tallies equals the number of names upon the poll-book. When the tallies largely exceed the number of names upon the poll-book, it is a convincing fact that the ballot-box has been stuffed or names fraudulently omitted. When the excess is hut little, such presumption is very slight; but when the excess is large in proportion to the votes cast, it is, to my mind, convincing. And where the judges have no means of purging the ballot-box, by throwing out the fraudulent votes, the whole return should be rejected, leaving to be determined upon contest the number of legal ballots actually cast.
Much criticism has been indulged in because it fixed the number ten as a dividing line, all under ten being presumed not to be, and all over ten presumed to be, fraudulent.
I think the court erred in not rejecting this entire return as fraudulent upon its face. But having decided to distribute this excess, no error occurred to the prejudice of plaintiff in error, or those he represented, the Democratic Candidates for the several offices.
In conclusion, my regret at this decision is deeper than can be expressed in words. It is an apparent, if not a real, sanction to frauds of the most atrocious character; crimes that, if continued, will ultimately sap and destroy our representative system of government. It is no comfort to say that a contest by the senate of Ohio furnishes an adequate remedy, especially since by counting these frauds the party *696 benefitted thereby gets the control of the body which is to sit in 'judgment on the contest. They obtain their certificates by means of fraud and forgery; this entitles them to become members of the contesting body.