THE STATE OF NEBRASKA, EX REL. W. W. WOOD, V ABEL HILL ET AL.

| | |
|---|---|
| 20 | 119 |
| 24 | 609 |
| 20 | 119 |
| 31 | 186 |
| 20 | 119 |
| 34 | 83 |
| 20 | 119 |
| 46 | 674 |

Elections: CANVASSING VOTE. Where the election returns in due form are made by the judges and clerks of an election, and the poll book so returned shows the entire number of votes cast at the election, and the tally sheet the number cast for a particular candidate, it is the duty of the board of canvassers to canvass the votes so returned, and to correct any error of the election board, apparent on the face of the returns, in adding up the votes cast for a candidate.

ORIGINAL application for mandamus.

*Marquett, Deweese & Hall* for relator.

*C. E. Magoon* for intervenors.

MAXWELL, CH. J.

This is original action to compel the defendants to re-assemble as a board of canvassers and canvass certain votes from Hunter precinct in Sheridan county.    It appears from the record that Sheridan county was organized in September, 1885; that at the election organizing the county no place received a majority of the votes cast for county seat, and a second election was called, and held in said county, for the purpose of locating a county seat, on the 6th day of October, 1885.    At this election, the relator claims the whole number of votes cast for the county seat was 1,758, of which Rushville received 919 votes, and Hay Springs 839, and that the votes were duly canvassed by the judges of election for the respective precincts; that the returns were made to Abel Hill, the county clerk, and he called to his aid two disinterested electors, viz., William Waterman and James F. Loofborough, who canvassed all of the votes returned, except from Hunter precinct.    That the returns showed the number of votes cast in said precinct to be 226, and that all of said votes were in favor of Rushville, but that said board only counted 42 of said votes instead of 226, leaving 184 uncounted.

Edward Satterlee, George W. Millard, J. E. Brown, and J. R. Graham, residents and tax-payers of said county, were permitted to intervene, and filed an answer, wherein they allege that, "in said Hunter precinct, in said county, the total number of ballots cast at said election on said question was forty-two, and no more;" which votes were all for Rushville, and were canvassed.    It is also alleged, in substance, that the 184 votes not counted were false and fraudulent, and that the total number of electors in Hunter precinct at the date of said election did not exceed nineteen.

Loofborough and Waterman, in their answer, as a reason for not canvassing all the votes returned from Hunter pre-

cinct, say: " That said poll book showed the names of two hundred and twenty-six persons who voted in said Hunter precinct, written down in regular order in the first part of the poll book, headed, " Names of Voters;" that the tally list returned with and belonging to said poll book from Hunter precinct was as follows : Under the headings " Name of Office " and " Name of Person voted for," was written, " For County Seat, Rushville," and immediately thereafter were two hundred and twenty-six tallies; that said tally sheet contained no other written words or figures; that in that part of said poll book where the form requires the number of votes received for each person to be written in figures and words there was written, " For County Seat, Rushville, 42," in figures, and " forty-two " in words; that said poll book and tally sheet were certified to in regular form by the clerks and judges of election, and that there was no indication on said poll book, or on the tally sheet, or on any other place, that any other place except Rushville was voted for for county seat."

A large amount of testimony has been taken in the case, the important points of which will be noticed.

Henry Bremer, one of the judges of the election in Hunter precinct, testifies, in substance, that he was present at the election and assisted in canvassing the votes, and that after the canvass the returns were put in the ballot box and the box locked; that the votes were folded up and put on a string, and placed in an envelope and sealed up; that the returns were left in his possession, and were placed in a trunk, and the trunk locked, and that he delivered said returns to the county clerk on the fourth day after the election; that the returns were in the same form when delivered to the county clerk as when the vote was canvassed, and had not been handled, examined, or changed by himself or any other person during the time they were in his possession. Thomas Preston, the other judge of the election, was also sworn, and testifies, in substance, that the

names of the voters, the number of ballots on the tally sheets, and the ballots cast, all corresponded in number with the whole number of votes certified to as being cast, and that there were either twenty-two or forty-two votes cast at said election, he could not " be positive as to the exact number." He also on cross-examination states he is unable to swear to the exact number of votes cast at the election, and that no change in the returns had been made, " to the best of his knowledge," when they were delivered to Bremer, the other judge. The testimony tends to show that Preston frequents saloons; that on at least two occasions in such saloons, where it is shown that he had been drinking, he had stated, in the presence of two witnesses, that he had been offered $500 to give his testimony in favor of one of the parties. He does not deny having made said statements, but says he " don't recollect of ever saying any such words." His testimony amounts to but little, even if given full force and effect; but if it was important, there is sufficient doubt cast upon it from the manner in which it was given, and the circumstances, as the witness himself describes them, to lead us to place but little reliance upon it.

It appears from the testimony that Hunter precinct extends "from the north line of town thirty to the south line of town twenty-four, taking in ranges forty-three and forty-four," being forty-two miles in length by twelve in width. No witness has testified that he was acquainted with the people in the entire precinct at the time of the election, and that the persons named in the poll list as having voted at said election did not reside in such precinct. General allegations will not do. All presumptions are in favor of the returns, and unless it is shown that they are fraudulent—not, in fact, returns—it is the duty of the board to canvass the vote so returned. The failure of the judges or clerks of election to add up the number of votes cast correctly will not preclude the board of canvassers from correcting the error where, on the face of returns, it is

apparent that there is a mistake. That is one of the objects of requiring a return of one of the poll books and tally lists. The poll books show the names of the persons purporting to have voted at the election, while the tally list shows the tallies or votes cast for particular candidates, as they were counted when taken from the ballot box. If 226 votes were actually cast at the election in controversy, as shown by the names of those purporting to have voted at said election, and by the tallies of votes cast thereat, it will not be seriously contended that a failure to add the number correctly will preclude the board of canvassers from making a correct computation. The board of canvassers cannot go behind the returns and sift out the names of voters claimed to be illegal. For this purpose the law provides another remedy; but they are to canvass the votes as returned to them, and if a mistake has been made by the election board in the mere addition of the votes cast for a particular candidate, as shown from the tally list and poll book, it is the duty of such board of canvassers to correctly add the same together; and in case they fail to do so they may be compelled to act. A peremptory writ of mandamus will therefore issue, requiring said defendants to re-assemble and canvass all the votes returned from Hunter precinct.

JUDGMENT ACCORDINGLY.

THE other judges concur.