STATE, EX REL. J. R. HANNA, M. B. GEARON, AND J. R. SWAIN, V. JOHN KAVANAGH, P. H. BARRY, AND A. L. COVEY.

**Counties:** RELOCATION OF COUNTY SEAT: RETURNS OF ELECTION. A special election was held in G. county for the purpose of voting upon the question of relocation of the county seat. At one of the precincts in the county sixty votes were cast, forty-seven of which were in favor of relocation and thirteen against. The returns of the election officers were duly certified, sealed, and delivered to one of the judges of the election, to be by him delivered to the county clerk. When delivered to the county clerk the returns showed evidences of having been opened and resealed. Upon being opened, it was found by proof submitted to the canvassing board that sixty-one names had been added to the poll list, the tally list removed and a new one substituted, showing one hundred and twenty-one votes cast, the official returns of the officers obliterated and new ones substituted, showing that one hundred and seventeen votes had been cast in favor of the relocation and four against. On proof of these facts by the election board of that precinct, the canvassing board required the election board to file correct returns, which was not done, and the canvassing board refused to canvass the illegal and forged return. Upon an application for mandamus to compel them to do so, it was *Held*, That the writ should be denied.

ORIGINAL application for mandamus.

*M. B. Gearon, J. R. Hanna, J. R. Swain,* and *Marquett, Deweese & Hall,* for relators, cited : McCreary, Elections, Sec. 227. 16 Kan., 102. Brightly's Leading Cases, 433, 447, 480. *People v. Hilliard,* 29 Ill., 423. *Brewer v. O'Brien,* 2 Ind., 423. 16 Neb., 262. 17 Id., 568.

*T. J. Doyle, H. G. Bell,* and *W. R. Kelly,* for respondents Barry and Covey.

*Talbot & Bryan,* for respondent Kavanagh.

*H. S. Sprecher,* for intervenors.

REESE, CH. J.

This is an application for a mandamus to compel respondent, Kavanagh, county clerk of Greeley county, and P. H. Barry and A. L. Covey, who were the canvassers of the votes of an election held in said county on the 17th day of January, 1888, to re-assemble and canvass the votes of Spring Creek precinct, within said county, which it is alleged they had refused to do.

From the record it appears that, prior to the date named, a special election was ordered in said county, by the county commissioners, for the purpose of voting upon the question of the relocation of the county seat. The election was held in all the precincts of the county as required by the order, and the returns were made to the county clerk. Barry and Covey were called by the county clerk as canvassers, and with himself constituted the board. The poll books from Spring Creek precinct were submitted to them, and upon opening which it was discovered that one hundred and twenty-one votes were returned instead of sixty, which it had been reported by rumor and otherwise had been actually cast. The vote, however, was canvassed and entered upon the election book, but before the completion of the canvass, one of the judges of election from that precinct appeared before the board and declared by affidavit filed with them that the returns presented by him and opened, were not the returns made by the election board, but that the footings had been changed and a large number of names entered upon the list of voters as having voted. Other proofs were taken, sufficient to satisfy the board that the returns canvassed were not the returns made by the election board, although the certificates and signatures thereto were in due form ; they therefore erased the canvass from the election book and declined to canvass the returns of the vote of the precinct.

The proofs show beyond question that at the election actually held in Spring Creek precinct sixty votes, and no more, were cast; that one George DeBord was named as the sixtieth upon the list, and was the last person present who voted at that election; that after the close of the polls the returns were made up, certified, sealed, and delivered to one of the judges of the election to be returned to the county clerk. The judge into whose custody the returns were given placed them under the cushion of his buggy seat and started toward Scotia, the present county seat. On his way he was joined by one of the other judges, who went with him as far as Greeley Center, arriving about noon. The returns were left in the buggy during a part of the afternoon, when they were taken charge of by the other judge, who remained in Greeley Center until about noon of the next day, when he went on to Scotia and delivered the returns to the county clerk. The board of canvassers observed before opening the package that mucilage had been freely used in sealing the envelope. Upon opening the envelope the poll book was found apparently in due form, but showing one hundred and twenty-one votes cast. Upon proof of the forgery being submitted to the board, they requested the officers of the election board to certify up true returns, which was not done, and the canvass was thereupon closed. There is no proof as to when or by whom the forgery was committed. An inspection of the poll book shows clearly a change of handwriting after the name of the sixtieth voter, Mr. DeBord, and it also shows erasures in the official return, and an entry, " For removal of county seat, Greeley Center, 117." The one hundred and seventeen apparently written in the same handwriting of the names of the sixty-one voters added to the list. The erasure also appears in the return of votes cast against the relocation of the county seat, and the word "four" written therein. The proof shows without contradiction that, in the first entry the word "forty-seven," the true return,

had been erased, but not entirely obliterated. The clerks of the election testified that the whole of the tally list had been removed and a new tally list made, showing one hundred and twenty-one votes cast, one hundred and seventeen of which were for Greeley Center and four against relocation. Opposite the tally list in favor of removal, the words "For removal of county seat, Greeley Center," and opposite the tally list against relocation, the words "Against relocation of the county seat," and "For county seat at NW$\frac{1}{4}$ of NE$\frac{1}{4}$, section 9, town 17, range 12, Greeley, Nebr.," are written in a very similar handwriting to that of the added names.

There is no doubt but that the changes referred to were made by some person having no authority to make them, without the knowledge of the election officers, contrary to the statute, and after the returns had been sealed up and transmitted to the county clerk. This must be taken as conceded. The question submitted is, whether or not the canvassing board should be compelled to canvass the returns thus placed in their hands.

In support of the contention that the writ should issue, it is urged that the act of canvassing the returns of election is simply ministerial, and that the canvassing board have no authority to go behind the returns. This we think is true, but they must be genuine returns of the election officers to entitle them to be canvassed. As is said in *State v. Hill*, 20 Neb., 122: "All presumptions are in favor of the returns, and unless it is shown that they are fraudulent—not, in fact, returns—it is the duty of the board to canvass the vote so returned." But we are not aware of any rule of law which would require the canvassing board to do more. The question as to whether the court would require the canvassing board to ascertain and canvass the true return is not presented, and will not be considered.

While the duties of canvassing officers are, in the main,

ministerial, yet some degree of discretion must be exercised by them in the matter of deciding what is and what is not the true return of an election; that is, that the returns submitted to them by the election board are genuine. The returns do not consist solely in the certificates and signatures of the election officers. Genuine and true returns consist of the whole of the election proceedings which are required to be entered upon the poll books and tally list. "The list of persons voting," "The tally list," and the " Official returns," are all as much a part of the returns of the board as their signatures, and if removed and substituted by a different poll list, tally list, and official returns, the returns would be no more genuine by the signatures of the officers being left than though they had been removed and others substituted. Mandamus will issue to compel action when the right of the relator is clear. In this case it cannot be said to be in that condition. The alleged returns presented to the canvassing board are a forgery; to canvass them would be a wrong, the commission of which the courts will not compel. The writ is therefore denied.

WRIT DENIED.

THE other judges concur.