STATE OF NEBRASKA, EX REL. D. T. WELTY, v. H. W.
MCFADDEN ET AL.

FILED JANUARY 9, 1896.   No. 8117.

1. Elections: CANVASSERS OF RETURNS.   The duties of canvassers
   of election returns are ordinarily ministerial, and as a general
   rule they are not clothed with either discretionary or *quasi-*
   judicial powers.

2. ———: ———.   Where it appears that an unauthorized alteration
   has been made in the return of the vote after the return has
   been delivered to the county clerk, the canvassers should dis-
   regard the alteration, and make the count according to the orig-
   inal and true return.

3. ———: RETURNS.  The returns of an election consist of the whole election proceedings which the statute requires to be entered upon the poll books and tally list, viz., the certificate of the election officers, the list of those voting, and the tally list of the number of votes cast for the different persons, and from these the abstract of the vote is to be made.

4. ———: ———: DUTY OF CANVASSERS.  In case of a discrepancy between the certificate and the tally list as regards the number of votes cast for a particular person, the canvassers must determine which is correct, after comparing them with the list of voters returned, and declare the result accordingly.

5. Mandamus: CANVASSERS OF ELECTION RETURNS.  Where a board of canvassers has made a canvass, declared the result, and adjourned, *mandamus* will lie to compel it to reconvene and make a correct canvass of all the returns before it, if upon the first canvass the board has failed or refused to fully perform its duty.

ORIGINAL application for *mandamus* to compel the respondents to reconvene as a board of canvassers and recanvass the votes cast in Furnas county, at the last general election, for the office of judge of the fourteenth judicial district of Nebraska.  *Writ allowed.*

No briefs filed.

*W. R. Starr* and *A. J. Rittenhouse,* for relator.

*J. T. McClure, contra.*

NORVAL, J.

This is an application for a writ of *mandamus*, brought originally in this court by D. T. Welty against the respondents, to compel them to reconvene as a board of canvassers and recanvass the votes cast in Furnas county, at the last general election, for the office of judge of the fourteenth judicial district.  To the petition, answers were filed by the respondents, and thereupon, by the agreement of parties, John F. Cordeal, Esq., was appointed referee to take the testimony and report the same to the court.  The cause

was heard upon the pleadings and proof, and as prompt action was required to protect the rights of the parties, a peremptory *mandamus* was issued as prayed at the last term of this court, without waiting for the preparation of an opinion expressing our views upon the questions presented by the record.

It appears that at the election held on the 5th day of November, 1895, the relator was the candidate of the people's independent party for the office of judge of the fourteenth judicial district; that George W. Norris was the candidate of the republican party for said office, and W. W. Barngrover was the candidate of the democrat party. Subsequent to said election, the respondents, as the county canvassing board, canvassed the votes cast at said election in said Furnas county for judge of the district court, and entered an abstract of the votes by precincts upon the book provided by the county clerk for that purpose, which abstract shows the votes cast in said county for said office were counted, canvassed, and declared as follows: For Barngrover, 108 votes; for Norris, 1,376 votes; for Welty, 881 votes. A copy of said abstract was transmitted to the secretary of state. It also appears that in Union precinct, in said county, the respondents found, and so certified, that there were cast for said office 10 votes for Barngrover; 46 votes for Norris, and for the relator 33 votes.

The first contention of the relator is that the returns made by the election board of Union precinct have been falsely and fraudulently tampered with and changed since they were lodged with, and received by, the county clerk and while in his custody, by increasing the number of votes cast for Norris from 40 to 46, and that the respondents should have credited to Norris 40 votes from said precinct instead of 46 votes. It is disclosed by the poll-book of Union precinct, conveyed to the county clerk, that the names of 86 persons, and no more, were returned by the election board as having voted in said precinct at said elec-

tion.    The certificate of the judges and clerks of election of said precinct accompanying the returns states the number of votes cast for judge of the district court as follows: "Annie R. Woodby, one; W. W. Barngrover, ten; G. W. Norris, forty; D. T.Welty, thirty-three."    The tally sheet returned with the poll-book from Union precinct now shows, *inter alia*, the following:

| NAME OF OFFICE. | NAMES OF PERSONS VOTED FOR. | TALLY LIST. | |
|---|---|---|---|
| Judge District Court | W. W. Barngrover | ⦀⦀ | 10 |
| | G. W. Norris | ⦀ ⦀ ⦀ ⦀ ⦀ ⦀ ⦀ ⦀ ⦀ ⏐ | 46 |
| | D. T. Welty | ⦀ ⦀ ⦀ ⦀ ⦀ ⦀ ⏐⏐⏐ | 33 |

It will be observed that there is a discrepancy on the face of the returns between the certificate of the votes cast for Norris for the office of district judge, and the tally sheet, or list, of the votes received by him.    The certificate of the judges and clerks of the election show that Norris received 40 votes, while the tally list of the poll-books, counting the tally marks thereon, credits him with receiving 41 votes, though as now appearing the tallies are footed 46.    The evidence discloses that, when the returns were made and delivered to the county clerk, the tallies marked opposite the name of Norris were carried out as either 40 or 41, and that the "0," or the "1," has been since fraudulently changed, but by whom it does not appear, into the figure "6," so as to make the number read "46" votes for Norris; and the respondents, acting as canvassers, have canvassed the same as 46 votes for Norris in said Union precinct.    Under the law, it was the duty of the respondents to cast up the votes received by each person according to the returns of such votes transmitted to the county clerk by the judges and clerks of the election from the several voting districts of the county.    It

is the settled law of this, and other states, that the duties
of canvassing boards are ordinarily ministerial, and that
they possess no judicial functions. (*Hagge v. State,* 10 Neb.,
51; *State v. Hill,* 10 Neb., 58; *State v. Stearns,* 11 Neb.,
106; *State v. Peacock,* 15 Neb., 442; *Long v. State,* 17
Neb., 61; *State v. Kavanagh,* 24 Neb., 506; *State v. Elder,*
31 Neb., 169; *Lewis v. Commissioners of Marshall County,*
16 Kan., 102; *People v. Hilliard,* 29 Ill., 413; *People v.
Head,* 25 Ill., 325; *State v. Steers,* 44 Mo., 223; *Phelps
v. Schroder,* 26 O. St., 549; *People v. Kilduff,* 15 Ill., 492;
McCrary, Elections, sec. 229, and cases cited in note 2.)
While generally such boards have no discretion in the dis-
charge of their duties, the rule has its exceptions. Thus,
where what purports to be two or more returns from the
same election district are received by the county clerk, the
canvassing board must necessarily determine from the face
of the papers which one shall be regarded as the true and
genuine return. (McCrary, Elections, sec. 227; *Long v.
State,* 17 Neb., 61.) So, too, where there is a discrepancy
between the certificate of votes cast for any person for a
particular office and the tallies of the votes cast for him, the
canvassers must determine from the entire returns which is
correct. There may be other cases where such boards are
clothed with some discretion or *quasi*-judicial powers, in
performing their legal duties, but whether so or not, for the
purposes of this case, it is unnecessary to determine. There
can be no doubt, when the returns are regular in form and
genuine, the canvass is purely a ministerial act, and the
votes must be counted as shown by the returns of the local
election boards, and that *mandamus* will lie in such case to
compel them to do so. The canvassers must cast up and
count the votes as returned by the officers of election, and
this is true, even though the returns may have been altered
either by fraud or accident after they were delivered to the
custody of the county clerk. (*State v. Dalton,* 1 O. C. C.
Rep., 161; *State v. Garesche,* 65 Mo., 480; *State v. Kava-*

*nagh*, 24 Neb., 506; *State v. Matley*, 17 Neb., 564.). In the Ohio case the poll book and tally sheet had been altered after the return had been signed, which was apparent from the face of the papers, by adding 200 tallies to certain candidates and changing the figure "7" into a "9," thereby increasing the vote on the tally sheet 200 votes. The court held that the canvassers should reject and not count such forgery or falsified figures. In *State v. Garesche, supra*, there had been an alteration of the returns after they had been sent in, and it was held, in a proceeding by *mandamus*, that it was the duty of the canvassers to disregard the alteration, and make the count according to the true return. In the case at bar the respondents should have based their canvass upon the original and genuine return from Union precinct, and rejected the forged portion thereof. Norris should not have been credited with 46 votes from said precinct, since it was only from the falsified returns that the inference could be drawn that that number of votes had been cast for him thereat.

As already indicated, there is a discrepancy between the tallies and the certificate of the election officers accompanying the returns from Union precinct of one vote since the number of votes cast for Norris for district judge, the tallies show 41 votes, while the certificate states he received 40 votes. It is urged by the relator that the tally list constitutes no part of the returns, and that the certificate of the election officers stating the number of the votes cast for a particular person must control. To this doctrine we cannot assent. There is some diversity of judicial opinion in regard to whether the tally list is a part of the returns and should be considered by the canvassers; but the decided preponderance of the decisions, under statutes similar to ours, sustains the doctrine that the tally list may be considered by the canvassing board. The returns consist of the entire election proceedings which the statute requires to be entered upon the poll-books and tally list. In other words,

47

the returns are composed of the certificates of the election officers entered in the poll-book, together with the names of those voting and the tally list of the number of votes cast for the different persons.    The tally sheet is as much a part of the returns as the certificate of the judges and clerks. (*State v. Hill*, 10 Neb., 62, 20 Neb., 119; *State v. Kavanagh*, 24 Neb., 510; *State v. Cavers*, 22 Ia., 343; *Simon v. Durham*, 10 Ore., 52; *People v. Ruyle*, 91 Ill., 525; *Dalton v. State*, 43 O. St., 652.)    It, therefore, follows that it is the duty of the canvassing board, in making the abstract of the vote of an election, to consider the entire returns, to-wit, the certificate of the election officers, the list of voters, and the tally list; and where there is a discrepancy or conflict between the certificate of the officers conducting the election and the tally list as regards the number of votes cast for a particular person, the canvassers, after comparing the certificate and tally list with the list of voters returned, must decide which is correct, and make an abstract of the vote accordingly.    No arbitrary rule can be laid down.    Upon such comparison, the canvassers may be justified in counting the votes as shown by the tally list, rather than the number stated in the certificate, and *vice versa*.    The law imposes upon the canvassers the duty of canvassing the returns exactly as filed with the county clerk by the election boards, and, until the canvassers have so compiled the vote, their task is uncompleted. They have no right to adjourn without day until they have finished their work.    It has been repeatedly decided that after they have made one canvass, declared the result, and adjourned, they may be compelled by *mandamus* to reassemble and make a correct canvass of all the returns, where it appears that upon the first convass they neglected or refused to fully perform their duty. (*State v. Dinsmore*, 5 Neb., 145; *State v. Hill*, 10 Neb., 63; *State v. Stearns*, 11 Neb., 106; *State v. Peacock*, 15 Neb., 442.)    A peremptory writ of *mandamus* will issue as prayed, requiring

the respondents to reconvene and canvass all the votes returned from Furnas county.

WRIT ALLOWED.