THE STATE EX REL. METCALF v. GARESCHE ET AL., APPELLANTS.

1. **Election Returns:** BOARD OF CANVASSERS: MANDAMUS. In a proceeding by mandamus to compel a board of canvassers to count a vote as returned by the officers of election, when it appears that an alteration has been made in the return of the vote, but the canvassers do not know whether it was made before or after the return was delivered to them by the officers of election, the circuit court will inquire and determine what the return, as delivered, actually was, and will compel them to make the count accordingly.

2. **Mandamus:** MINISTERIAL OFFICER. Before issuing a writ of mandamus to a ministerial officer, the court must ascertain what is his specific legal duty in the premises.

*Appeal from St. Louis Court of Appeals.*

*Amos R. Taylor* for appellants.

Under the issues presented, we submit:

1st. That if there had been an alteration of the return after it came to the clerk's office, yet the appellants in the discharge of their duty, could not hear evidence as to any alteration; and if the paper appeared to be a return, and the figures 292 were plainly and legibly written on the face of the poll-book, as the vote of Frost at the precinct, appellants had no discretion but to count the return as it appeared on the poll-book, and having done this, their duty, the court cannot compel them by mandamus to do otherwise. American Law of Elections, Sec. 82, p. 64, Sec. 331; *State v. Steers*, 44 Mo. 223; *Morgan v. Quacken-*

*bush,* 22 Barbour 77; *Thompson v. Ewing,* 1 Brewster 77; *People v. Hilliard,* 29 Ill. 420.

2nd. That appellants, as such board of canvassers, had no power to hear evidence and decide whether or not there had been an alteration. Constitution of Mo. Art. 6, Sec. 1; *State ex rel. Drew v. McClin,* Supreme Ct. Florida, 1876.

3rd. The court has no jurisdiction to hear evidence (other than what was before the canvassers,) and after investigating for itself, from evidence, command the board of canvassers to do the act. The vice of Judge Lindley's decision was, that while he conceded that appellants were guilty of no shortcoming in their duty, (for he properly held that appellants had no power to hear evidence of the alteration,) yet he held that the court could take up the investigation and make the inquiry for them, and, having ascertained for them the right, would issue the writ against them. In other words, to use his expression, would lend them a judicial eye. Now, neither this judicial eye nor any of its functions could be used by appellants, even if loaned by the court. *State v. Dougherty,* 45 Mo. 295; *Barnes v. Gottschalk,* St. Louis Court of Appeals, 1877, Mo. Appeal Rep., Vol. —; *State v. Bailey,* 7 Iowa 404; *Ingerson v. Berry,* 14 Ohio St. 315; *Luce v. Mayhew,* 13 Gray 83.

*Henderson & Shields* for respondent.

On the facts proved, we contend there is simply one issue, i. e.: Will mandamus lie to compel a ministerial officer to perform the duty devolved upon him by law, when he persists in violating the law on a plea of ignorance, or on a plea of not being able to find out what his duty is? In other words, can the court determine for him what his duty is, and compel him to perform that duty, when from lack of information, he, in good faith, refuses to perform it, or from corrupt and arbitrary motives he violates the law to the detriment of another's right? To state the question in its boldness, appellants contend that a false and fraudulent return, defeating the will of the people, and

defrauding the relator of his rights, must be sanctioned by the courts of the country, because canvassers of the returns do not participate in the fraud actively or stand quietly by and see it done. The honesty of purpose in the canvassers and their plea of ignorance, was conceded by the relator, and he attempted to inform them of the facts by which their minds might be enlightened—by an appeal to a tribunal with undoubted authority to discover the truth by legal examination. These same ignorant canvassers then say that the court cannot inform them of the truth and compel them to do their duty, because without knowing the truth, they have exercised a discretion and decided the matter contrary to the facts, and the court cannot determine their duty for them, as that is their discretion. This is the aspect presented by this appeal.

We insist that the canvassers had no discretion but the plain, simple duty of casting up and certifying the returns as made. If they were not certain what the figures as returned were, perhaps the proper course was to take such steps as to force the relator to appeal to a court where that question could be investigated and determined, then being so determined, it was their plain duty to so certify. And the expression of Judge Lindley in his opinion, "as he (the ministerial officer,) has no judicial eye, the court, through the medium of testimony taken for that purpose, will enable him to see and advise him what to do," is exceedingly *apropos*, though the counsel for the appellants seem to object to "this judicial eye" more than to anything else. We cite the following authorities: 1 Wag. Stat. 569; §§ 24, 25; *State v. Wilson*, 49 Mo. 146; *State v. Howard Co. Ct.*, 41 Mo. 247; *State v. Lafayette Co. Ct.*, Ib, 545; *State v. Ralls Co. Ct.*, 45 Mo. 58; *State v. Rodman*, 43 Mo. 256; *State v. Harrison*, 38 Mo. 540; *State v. The Treasurer*, 43 Mo. 228; *People v. Supervisors*, 12 John. 414; *Hull v. Supervisors*, 19 John. 260; *Ex Parte* Koon. 1 Denio 644; *People v. Dutchess & Columbia R. R.*, 58 N. Y. 152; *Bright*

*v. Supervisors*, 18 John. 242; *Page, Second Auditor v. Hardin*, 8 B. Monroe 652; *Smith v. Moore*, 38 Conn. 105.

*Hitchcock, Lubhe & Player* for respondents.

1. When a peremptory writ of mandamus is. sought against public officers, because of an alleged failure or refusal on their part to perform a specific duty enjoined on them by law, the only questions to be considered by the court, its jurisdiction being conceded, are:

(*a.*) Are the respondents charged by law with the specific legal duty alleged by the petitioner to exist?

(*b.*) Have the respondents in fact failed, refused òr neglected, or do they still fail, refuse or neglect, for any reason, to fulfill such duty as by law prescribed?

(*c.*) Is it true that there is no other adequate specific legal remedy than a writ of mandamus for the enforcement of the specific legal duty in question?

(*d.*) Does it appear that the petitioner has such an interest in or such relation to the proper performance of the specific duty in question, as to entitle him to the aid of the court in thus enforcing its performance? High on Ext. Rem. §§ 32, 33, 60, 63; *People v. Rives*, 27 Ill. 242; *People v. Hilliard*, 29 Ill. 419; *Light v. State*, 14 Kansas, 492; *Kisler v. Cameron*, 39 Ind. 488.

If it shall appear to the court, whether from the facts set out in the writ and confessed, or not sufficiently denied or avoided in the return of the respondents, or from the state of facts disclosed by the evidence on a trial of the issues made by the return, or from both, that all these questions should be answered in the affirmative, then the peremptory writ should issue. It is absolutely immaterial whether the respondents did or did not know what was "the exact duty imposed on them by law." The court is concerned only with the questions above stated, and upon its own affirmative answer to them, the writ follows *ex debito justitiæ*. Nothing can be a legal excuse or valid reason in behalf of the respondents, short of a state of facts which

negatives some one of these conditions. "Until ministerial officers have performed the exact duty imposed upon them by law, they must be considered in default." *Clark v. Mc-Kenzie*, 7 Bush. (Ky.) 523; *Bell v. Pike*, 53 New Hamp. 473; *People v. Taylor*, 1 Abb. Pr. (N. S.) 200; *Ellis v. Co. Com'rs*, 2 Gray 370; S. C., 30 How. Pr. 78; *State v. Gibbs*, 13 Fla. 55. Mandamus will lie to compel a correct canvass of election returns. *Light v. State*, 14 Kansas 489, 492.

2. It is the specific legal duty of the respondents here under the statute (1 Wag. Stat. p. 569, §§ 24, 25, 29,) to examine and cast up the votes given to each candidate, according to the returns of such votes transmitted to the clerk of the county court by the judges of election from the several election districts. The manifest intent of the statute is, that the clerk of the county court and the two justices who assist him, shall fulfill this duty by casting up—that is, by adding together—only such returns as were in fact made and certified to the county clerk by said judges respectively on the respective poll-books. The casting up, as for such returns, of any number or numbers other than those actually certified into the clerk's office from any election district, whether done willfully or by mistake, would be a failure to perform the specific ministerial duty imposed by law. High on Ext. Rem., § 60. Nor can this duty be changed by anything which may take place after the poll-books have become official returns by their delivery to the clerk of the county court. No alteration, whether made by fraud or by accident, of any number which was by said judges of election certified and delivered to the clerk as the vote given to any candidate—if made after the delivery of such poll-book to the clerk as an official return—can have any effect whatever, in contemplation of law, to change the number which it is the duty of the clerk and the justices who assist him to cast up.

3. The duty imposed by the statute on these respondents is in the strictest sense a ministerial duty, as to which

they have no official discretion whatever. High, Ext.
Rem. §§ 55, 60; *State v. Steers*, 44 Mo. 227; *State v. Law-
rence*, 3 Kan. 95; *Kisler v. Cameron*, 39 Ind. 488; *State v.
Co. Judge Marshall Co.*, 7 Iowa 193. When the writ of
mandamus is issued to a ministerial officer, the court
necessarily ascertains the duty of the respondent, not
only to act, but to act in a specific manner as to which he
is allowed no discretion; and therefore it does command
him, not only to act, but so to act as that the exact duty
prescribed to him by law, and which the court has previ-
ously determined to be his duty, shall be fulfilled by him.
*Dunklin Co. v. District Co. Ct.*, 23 Mo. 454.

Hough, J.—This was an application at the relation of
Lyne S. Metcalf for a mandamus to compel the defendants,
Finney and Schultz, Justices of the County Court of St.
Louis county, and the defendant, Garesche, clerk of said
court, as canvassers of the returns of the election held on
the 7th day of November, 1876, to count the returns of
precinct No. 57 in St. Louis county, as two hundred and
seventy-two votes for R. Graham Frost and three hundred
and eighteen votes for the relator for Representative in
Congress for the third district of Missouri. The chief
averments of the alternative writ, omitting the formal
parts, are that at said election the relator and said Frost
were the only candidates for Representative in Congress
for said district, and that the judges and clerks of election
precinct fifty-seven, in said district, certified on the poll-
books from said precinct, that at said election said Frost
received for said office two hundred and seventy-two votes
and the relator three hundred and eighteen votes; that
said poll-book and return, so certified, were returned and
delivered to defendant, Garesche, at the county clerk's
office on the 8th day of November, 1876; that after said
book was so received and while it was in the custody of
said Garesche, and on the 9th day of November, 1876, said
return was illegally, falsely and fraudulently altered by

changing the figure seven therein into a figure nine, so as to make it read two hundred and ninety-two, instead of two hundred and seventy-two, votes for Frost; that the defendants, acting as canvassers, have arbitrarily and oppressively refused to count the vote of said precinct fifty-seven as two hundred and seventy-two for Frost, as the same was returned and certified, and, unless prevented, will, contrary to law and in violation of their duty in the premises, falsely return two hundred and ninety-two votes as cast for Frost at said precinct, instead of two hundred and seventy-two, as returned by the judges and clerks of election.

The defendants, Finney and Schultz, in their return to the writ, averred that they did not know that there had been any change in the certificate and return of the judges and clerks of election precinct No. 57, nor whether if such change had been made, the same was made before or after said return was delivered to said Garesche; that said Garesche informed them that there were circumstances which led him to believe that said return had been changed in his office, but that he had neither official nor personal knowledge of the fact; that said Garesche furnished them with said poll-books, and the returns and certificates showed that said Frost had received two hundred and ninety-two votes at said precinct at said election, and they, as canvassers, counted said returns as they appeared on the face of the poll-books, and not otherwise, as they were in law bound to do.

Defendant Garesche in his return averred that, from circumstantial evidence elicited by him in an examination of the facts, he believed that the alteration as alleged in the petition had been made, but by whom he had no knowledge or information sufficient to form a belief; that in his desire to do even justice and faithfully perform the duties imposed on him by law, he had inquired of counsel learned in the law, whether he would not be authorized to change it to two hundred and seventy-two, which he

believed to be the true return. But he was by the counsel whom he so consulted, advised that unless he knew the fact of such alteration, and did not simply believe it from circumstances which came to his knowledge since the alleged alteration was made, he had no authority to count it otherwise than as two hundred and ninety-two, but that with these figures he should in his return recite his belief as to the alteration. The circuit judge who tried the cause found, from the testimony, that the figures on the poll-book of precinct fifty-seven, representing the number of votes cast for Mr. Frost, were two hundred and seventy-two when the said book was returned by the judges of election to the county clerk; that the figure seven of the said number two hundred and seventy-two was changed and altered to a figure nine, so as to make the figures representing the number of votes cast for Mr. Frost at that precinct two hundred and ninety-two instead of two hundred and seventy-two, and that such change or alteration was made after the said poll-book had been returned by the judges of election to the county clerk, and thereupon awarded the peremptory writ as prayed. The judgment of the circuit court was affirmed by the Court of Appeals, and the defendants have appealed to this court.

The facts found by the circuit judge were fully established by the testimony given at the trial. The number of votes returned for Frost was two hundred and seventy-two and not two hundred and ninety-two. With the correctness of that return the canvassers had nothing to do, nor was it a proper subject of inquiry in the trial court. The duties of the canvassers were purely ministerial; they were without official discretion. The vote which was certified to the county clerk, was the vote which it was the duty of the defendants to certify to the Secretary of State. No alteration of that vote on the poll-books which was known by the canvassing officers to have been made, either by accident or fraud, after they came to the custody of the

1. ELECTION RE-TURNS: board of canvassers; mandamus.

county clerk, could alter their duty to certify the vote so returned. It would in such case have been their duty to restore the true figures, and certify the same as they had originally been returned to them. The performance of such duty could undoubtedly be compelled by mandamus. This much is conceded by defendants' counsel. Where, however, the canvassing officers know that an alteration has been made, but do not know, though they may have good reason to suspect, that such alteration was made after the poll-books came to the custody of the county clerk, as they cannot take testimony and cannot therefore ascertain what figures were certified by the judges and clerks of election, can the circuit court in a proceeding by mandamus to compel such canvassing officers to count the vote certified by the judges and clerks of election, determine for them which is the vote so certified? This is the precise question presented by the appeal. We think it can. If it cannot, a proceeding by mandamus, in such a case, must be utterly nugatory. A peremptory writ of mandamus simply to count the vote certified by the judges and clerks, without ascertaining which was the vote so certified, would be a mere *brutum fulmen*, as it could never be determined from a certificate of obedience, whether the writ had in fact ever been obeyed. If it be left to the canvassers to determine what the true return is, no attachment for a violation of the writ, in that regard, could ever issue; for the court could never determine that its writ had been violated, without first deciding what vote should have been counted. The object of the writ in the present case was to compel the counting of the true return; the writ could not issue until there had been a failure or refusal to count such return and no such failure or refusal could be found to exist, until the court had determined which was the true return.

Having ascertained which was the true return and that the canvassing officers had failed or refused to count it,

thus leaving their legal duty unfulfilled, the

**2. MANDAMUS: ministerial officer.** peremptory writ commanded its performance. It will thus be seen that the right to determine the specific legal duty of ministerial officers, such as the defendants are, necessarily results from the very nature of the proceeding by mandamus. In the case of officers or tribunals exercising judicial functions, it is otherwise; the writ only commands them to act, without designating what their action shall be. In the case of *State ex rel. Adamson v. Lafayette County Court*, 41 Mo. 224, it was said: " The writ of mandamus either lies to compel the performance of ministerial acts, or is addressed to subordinate judicial tribunals, requiring them to proceed to exercise their judicial functions." The discrimination here made between the functions of this writ when addressed to judicial or ministerial officers, supports the view we have taken. It does not lie to compel the performance of a particular judicial act, but it does lie to compel the performance of a particular ministerial act. It simply requires the judicial officer to proceed to do his duty; it not only requires the ministerial officer to proceed to do his duty, but it also indicates what his specific duty is.

To assert that the writ of mandamus cannot require the performance by a ministerial officer of any act which he does not, with the lights before him, conceive it his duty to perform, is to destroy the efficacy of the writ, and to substitute the conscience of the officer for the command of the law; for his errors, unlike those of judicial officers, may not be reviewed upon appeal. Yet such is the argument of defendants. They insist that as they intended no wrong in counting 292 votes for Frost instead of 272, and because they did not have sufficient information to convince them that the alteration was made after the returns reached the county clerk, and they were without authority to take testimony on that subject, therefore the court can not compel them to do otherwise than they have done;

that the court itself would not have done otherwise, if placed in their situation. Such considerations might be invoked to shield them from penal or pecuniary liability, but they cannot excuse the non-fulfillment of the law. The court found that the specific legal duty imposed upon the defendants by statute to count the return as transmitted by the judges and clerks of election, had not been performed, and it required them to perform it. The judgment of the circuit court was right, and the judgment of the court of appeals will therefore be affirmed. All the judges concur.

AFFIRMED.