STATE OF MISSOURI, Respondent, v. BARNEY MACKIN, Appellant.

**Kansas City Court of Appeals, March 31, 1890.**

*Rehearing denied, May 12, 1890.*

1. **Local Option:** ADOPTION: JUDICIAL NOTICE. Courts will not take judicial notice of the local adoption of the local-option law, but it must be established by evidence as any other fact is proved.

2. ———: ELECTION : BOARD OF CANVASSERS. Where the county clerk takes the *three* judges of the county court to assist in examining and casting up the votes given at any election to adopt the local-option law, such board of canvassers has not been selected as the law requires (and, therefore, not selected at all), and hence the result of said election is not legally ascertained, and, on *rehearing*, the vote has not yet been counted.

*Appeal from the Ray Circuit Court.*—HON. JAMES M. SANDUSKY, Judge.

REVERSED.

*J. L. Farris* and *Ball & Hamilton,* for appellant.

(1) It is a well-settled principle of law in this state that courts cannot take judicial notice of a fact that a county has adopted by a majority of the votes of the citizens thereof any special law, and an indictment must contain allegations of every fact which is legally essential to the punishment to be inflicted. 76 Mo. 600; 79 Mo. 98; *State v. Cleveland,* 80 Mo. 108, 287; 81 Mo. 171; *State v. Buster,* 90 Mo. 514. It is a question of fact that requires proof in this cause as to when said alleged local-option law took effect in said Ray county and whether or not it was in force at the time said offense is alleged to have been committed by appellant. These facts should have been alleged in the indictment herein. (2) The records of the court not only show omission to comply with the law in this state governing general elections, but show, affirmatively, a palpable violation of such law. 2 R. S. 1879, secs. 5506, 5507, p. 1082.

*T. N. Lavelock, J. W. Shotwell* and *C. J. Hughes,* for respondent.

(1) The court will take judicial notice of the passage of the local-option law, and the conditions under which it may become operative. It is a general and public act, made for the entire state, and every county may avail itself of the privileges offered, and

by a majority vote become subject to its provisions. *State ex rel. v. Wilcox*, 45 Mo. 458 ; 55 Mo. 297 ; *State ex rel. v. Pond*, 93 Mo. 624–8. ( 2 ) The court takes judicial cognizance of all such laws ; though local, they are public, not private, laws. It was not necessary, therefore, for the indictment to contain a detailed statement of all the formalities required to precede the law becoming operative. *State v. Bench*, 68 Mo. 79 ; *State v. Emery*, 3 S. E. Rep. (N. C.) 810 ; *Jones v. State*, 10 Atl. Rep. (Md.) 216. ( 3 ) The poll books of every precinct were transmitted to the county clerk within two days after the election, and thereupon the clerk took to his assistance Judges THOMAS McGINNIS, S. A. WOLLARD and ADRIAN GORDON, whom the record in evidence shows to have been judges of the county court of said county, and, in their presence, cast up the votes polled at the various voting precincts in the county at the said election. The clerk afterwards filed his report of the results of said election, as ascertained by him with the court, in compliance with section 5 of the local-option law. The court was not in session when the result of said election was ascertained, for the report says : The clerk took to his assistance the judges, not the court. But after the votes were cast up, and the result ascertained by the clerk, the court met pursuant to adjournment, and the clerk's report was then filed and spread upon the record, from which it appeared to the satisfaction of the court that a majority of the votes cast at said election were against the sale of intoxicating liquors. The counsel for appellant confound the record of what the clerk did, in the presence of the judges, with the action of the court itself, and fail to distinguish the record of the clerk's report, from the proceedings of the court.

GILL, J.—At the last October term of the Ray circuit court the defendant, Mackin, was tried and found guilty of selling intoxicating liquors in said Ray

county, contrary to the provisions of what is known as the "local-option" law, alleged to have been legally adopted at an election held in said county, August, 1887. The indictment charged the selling to have occurred in December, 1888, of which the jury found the defendant guilty, and assessed his punishment at three hundred dollars, and from the judgment thereon defendant has appealed to this court.

I. Of all the questions presented in this record, and discussed at the hearing, we shall here notice but one, since our view thereon effectually disposes of this case. In the effort to prove the adoption of the provisions of the "local-option" law, by which the sale of intoxicating liquors should be prohibited in Ray county, among other matters introduced by the state's attorney, was the following, spread upon the record of the county court of Ray county, to-wit:

"Thursday, August 11, 1887.

"Court met pursuant to adjournment; present, Judges Thos. McGinnis, S. A. Wollard and Adrian Gordon, John C. Morris, sheriff, and W. E. Ringo, clerk.

"Now, at this day, comes William E. Ringo, clerk of the county court, and takes to his assistance Judges Thos. McGinnis, S. A. Wollard and Adrian Gordon, and in the presence of said judges casts up the votes polled at the various voting precincts in said county, at the special election held Tuesday, August 9, 1887, under the provisions of the 'local-option' law, and finds from said poll books that seventeen hundred and seventy votes were cast 'for the sale of intoxicating liquors' and nineteen hundred and seventy-seven votes were cast 'against the sale of intoxicating liquors,' as shown from the certified returns made by the judges and clerks of the following election precincts in said county:"    *    *    *

The foregoing purports to show a canvass of the returns from the various election precincts, and the

question is, does it show such an ascertainment and determination of the result of said election as the law directs. It is well understood that the courts will not take judicial notice of the local adoption of this law of local prohibition, but that it must be established by evidence as any other fact is proved. *City of Hopkins v. Railroad*, 79 Mo. 98; *State v. Hays*, 78 Mo. 600; *State v. Cleveland*, 80 Mo. 108. Hence the necessity of proof that Ray county had, by force of an election for that purpose, determined against the sale of intoxicating liquors within the limits as provided in said "local-option" law. By that act (section 1) provision is made for an election (ordered by the county court upon the requisite petition of qualified voters) and that "such election shall be conducted, the returns thereof made, and *the result thereof ascertained and determined* in accordance in all respects with the laws of this state governing general elections for county officers, and the result thereof shall be entered upon the records of such county court." Laws of 1887, sec. 1, p. 180. And, thereupon, section 5 of the said act provides that if a majority of the votes cast at such election shall be "against the sale of intoxicating liquors" the county court shall publish the result of said election (so ascertained by said board of canvassers) for four weeks, and said act shall therefrom take effect in said county.

The law for ascertaining and determining the result of general elections for county officers is found in sections 5505, 5506 and 5507. Section 5505 directs the judges of election at each precinct to transmit to the county clerk one of the poll books kept at such precinct, and, thereupon, section 5506 provides as follows: "The clerk of each county court shall, within five days after the close of each election, take to his assistance two justices of the peace of his county, or two judges of the county court and examine and cast up the votes given to each candidate, and give to those having the highest number of votes certificates of election."

Insert, now, the foregoing section into the "local-option" law, and we have, on determining the result of the election there provided for : *First, a board of can-vassers*, composed of the county clerk and *two* judges of the county court ( or two justices of the peace), in all three persons ( and no more, no less ) with duties devolving on all alike, and jointly to examine these poll books, or returns, from the various precincts and cast up the votes given on the propositions "for" or "against" selling intoxicating liquors, and declare the result, which "result shall be entered upon the records of such county court." And, *second*, a publication of such result, so certified to, for four weeks.

But it appears, from the evidence in this cause, that the board of canvassers, provided by law for ascertain-ing and determining the result of this election in Ray county, was not selected or organized, but *another* and *different* body. The law requires the board to be com-posed of the county clerk and *two* judges of the county court, or two justices of the peace. Here it was com-posed of the clerk and *three* judges—four persons instead of *three* as fixed by the statute. It follows, therefore, that the result of this election has never been legally determined, since the returns have not been can-vassed, nor the votes cast up, and result declared, as required by law. It will not answer this objection to say, that the two judges, or justices, are mere *witnesses* to the counting by the clerk, and, therefore, that hav-ing *three* instead of *two witnesses*, to the duty there performed by the clerk, will not invalidate the canvass. The two judges are not *mere spectators*, but are two of three members of a committee, board or body, with power and duties coextensive with the clerk, in the matter of determining the result of the election. The section before quoted provides, that the clerk "shall take to his *assistance* two justices of the peace," or judges, not that he shall call in such officers as *wit-nesses* merely to the performance. These judges or

justices, when selected, become as completely a component part of this canvassing board as is the clerk. *Three* persons compose this body, and doubtless this was for the purpose of securing action by a majority, if any matters of dispute arise between the three. At all events the law-makers of the state have specifically named a definite and certain body to perform the responsible duty of casting up and declaring the result of the election, and it ill becomes this court to assert that another and different body will answer the same purpose. To admit the addition of one man, is the same, in principle, as to call in *ten* more than the statute names?

True it is, that these canvassing boards are officers whose duties are merely ministerial (65 Mo. 480; McCrary on Elections, sec. 229), still the composition of such board is provided by law, and neither the county clerk nor the courts have any power or authority to organize it differently. *Trueheart v. Addicks*, 2 Texas, 217. It was the duty of County Clerk Ringo, on receipt of the poll books from the various precincts, to call to his assistance two judges of the county court, or two justices of the peace of Ray county, and with them cast up the votes given, and certify the result thus obtained to the county court. Said clerk has not, as yet, performed that duty. The board of canvassers has not been selected as the law requires (and, therefore, not selected at all), and hence the result of said election is not legally ascertained.

It follows, therefore, that the defendant was illegally convicted, and the judgment of the circuit court is reversed. All concur.

### ON MOTION FOR REHEARING.

PER CURIAM.—The motion for rehearing which has been filed in this cause and the argument in support thereof discloses a total misconception of the opinion rendered. Much argument is submitted to sustain the

position that, on account of a technical irregularity, an election should not be set aside or the will of the majority disregarded, when fairly expressed. It is urged that the result of the opinion of the court in this case is to authorize the granting of dramshop licenses in a county where a majority of the voters, as expressed at an election, were opposed to the same. The evils deprecated are not founded upon anything said in the opinion, or anything which can be deduced from it. The validity of the election was not raised in the case, nor referred to in the opinion. We have not "set aside" the election; but have merely decided that the *result* of that election has not yet been ascertained. That the vote has not yet been counted; a thing which is necessary to do, as the statute directs, before the law goes into effect. The case of the *State ex rel. Church v. Weeks*, 38 Mo. App. 566, was where the vote was not counted for a year after the election, and we held that the delay did not invalidate the law, it being finally counted as the law directs. The motion is overruled.

*Rehearing denied, May 12, 1890.*