THE STATE OF MISSOURI, Respondent, v. HENRY SEARCY, Appellant.

St. Louis Court of Appeals, October 27, 1891.

1. **Appeals:** VALIDITY OF CREATION OF TRIAL COURT. The question of the legal existence of the trial court cannot be raised on appeal.

2. **Local Option:** BURDEN OF PROOF. The adoption of the local-option law is established *prima facie* by the state by the production of a certified copy of the result of the election, as spread upon the records of the county court in compliance with that law, and proof that the requisite subsequent publication of the result was made. ( *State v. Searcy*, 39 Mo. App. 393, *is approved.*)

3. **Elections:** CERTIFICATE OF ELECTION. *Held, arguendo,* that in the case of a general election, the county clerk is required to take to his assistance two justices of the peace, or two judges of the county court, only for the purpose of aiding him in examining and casting up the votes given to each candidate, and that these two justices or judges are not required to sign the certificate of election given to the candidate having the highest number of votes.

4. **Local Option:** CERTIFICATE OF ELECTION. It is not essential to the validity of the election, putting the local-option law in force in any locality, that any certificate of the election should be signed by the two justices or the two judges of the county court, called in to aid the county clerk in casting up the votes.

5. **County Court Records:** PRESUMPTIONS. It is presumed that the county court orders everything, which appears upon its records, to be recorded therein.

6.  **Local Option:** SALES BY DRUGGISTS. A person who is indicted
for a violation of the local-option law, and defends on the ground
that he is a licensed druggist and as such made the sale of liquor
for which he is indicted, must bring his sale within the provisions
of the law relating to such sales by druggists, and, where the sale
is for medicinal purposes, must, therefore, show a physician's
prescription.

*Appeal from the Christian Circuit Court*—Hon. M.
Oliver, Judge.

Affirmed ( *and certified to supreme court* ).

O. H. Travers and Harrington & Pepperdine, for
appellant.

J. H. Duncan and James R. Vaughan, for respond-
ent.

Thompson, J.—The defendant was indicted in the
criminal court of Greene county. for selling a half pint
of alcohol in violation of the statute, known as the local-
option law ( R. S., sec. 4598 ), alleged to have been duly
put in force in Greene county by an election under the
provisions of that statute. A change of venue was taken
to the circuit court of Christian county, in which there
was a trial which resulted in a verdict of guilty, and in
the imposition of a fine of $300. From this judgment
the defendant prosecutes this appeal.

I.   In the circuit court of Christian county defend-
ant moved to quash the indictment for the reason, in sub-
stance, that the criminal court of Greene county had no
valid existence, by reason of the fact that the constitu-
tion ( art. 6, sec. 31 ) prohibits the legislature from
establishing criminal courts, except in counties having
a population exceeding fifty thousand, alleging that
Greene county had not at the date when the act creat-
ing the court was passed, and has not now, a popula-
tion exceeding fifty thousand, and appealing to the
national census as evidence of that fact, of which the

courts take judicial notice. The circuit court of Christian county overruled this motion, and it is renewed in this court. The position of the defendant upon this question is, that this is a jurisdictional question which can be raised at any stage of the proceedings in a criminal case ; that, by reason of the fact, as shown by the national census of 1880, and also by the national census of 1890, that the county of Greene had not, either at the time when the legislature established that court, or at the present time, fifty thousand inhabitants, and of the consequent constitutional inability of the legislature to create that court, the court never had any legal existence; and that, as the court itself never had any legal existence, the doctrine which upholds the acts of *de facto* courts has no application, the argument being that there can be no such thing as a *de facto* judge, unless there is a *de jure* court.

If this question is properly raised upon this record, it is our duty to send the case to the supreme court in the first instance, for want of any jurisdiction in this court to determine constitutional questions. But we are of opinion, after giving careful consideration to the matter, that the question does not at all arise upon this record. We are of opinion that, from the very nature of things, the question of the legal existence of a court cannot arise upon an appeal from a judgment in a proceeding commenced in that court. For instance, in this case, if there was no such court as the criminal court of Greene county, then there was no case to be tried, or in any way considered, by reason of the change of venue in the circuit court of Christian county ; nor is there any case to be heard, or in any way considered, in this court, by reason of an appeal from the last-named court. The very act of taking a change of venue from the criminal court of Greene county to the circuit court of Christian county, under the statute, presupposes that there was a court, and a cause depending in a court, from which a change of venue could be thus taken ; and the very act

of appealing from the judgment in this cause of the circuit court of Christian county to this court presupposes in like manner the valid existence, for the purposes of this proceeding, of a court in which an appealable proceeding could be commenced. If the position of the appellant on this point is correct, there is no case for us to determine here, and nothing for us to do but to strike the supposed appeal from our docket. Certainly it would not be contended that an appeal can be taken from an order of a private citizen who pretends to act as a court, when no such court in fact exists.

Neither we, nor, it may be assumed, the supreme court if the cause were transferred to it, could render any judgment or take any action upon the motion, which could not have been done in the criminal court, if the motion had first been made there. But, upon what theory can it be contended that the criminal court of Greene county had jurisdiction to adjudge its own nonexistence as a court? How can a court adjudge that it is not a court? What authority is conferred by the constitution or the laws upon a court of justice, acting as a court, to commit suicide?

But, if we could entertain this motion, what judgment could we render in deciding it? Could we reverse the judgment of a court, which rests its jurisdiction by derivation upon an indictment found in a court which does not exist? Could we discharge the defendant from paying a fine in a matter, where there is no cause depending before us? Could we send a mandate to the judge and clerk of the criminal court of Greene county, commanding them to desist from acting as a court? Clearly we could not, for the reason, if for no other, that they are not before us as parties for any purpose. What, moreover, would be the public effect of any possible judgment which we might render sustaining this motion? The judge and clerk of the criminal court of Greene county would go on holding their court as heretofore, and we should have the incongruous spectacle

of a court good for the purposes of one case, and bad for the purposes of another.

We are supported in this conclusion by the decision of the supreme court in *State v. Rich,* 20 Mo. 393, and by the conclusive reasoning of Judge LEONARD in giving the opinion of the court in that case.   There the court held that the constitutionality of a law establishing a new county could not be inquired into on a motion to quash an indictment found in a court of such county. He pointed out the absurdity of supposing that a court established by law could adjudge itself to be a nullity. He concluded by saying : " It would, indeed, be impracticable to act upon any such principle. If, whenever any act done under the authority of the law came in question collaterally, the constitutionality of the law could be contested, then the trial of the main issue must necessarily be delayed until the preliminary fact, upon which the validity of the contested legislative act depended, should first be tried and determined upon testimony, which, being different in different cases, might involve the absurdity of deciding the law constitutional one day, and unconstitutional the next.   But we need not press these things farther ; the result is manifest ; all such inquiries must be excluded whenever they come up collaterally, and the county, its courts and its officers must be treated as things existing in fact, the lawfulness of which cannot be questioned, unless in a direct proceeding for that purpose."

It is, no doubt, too broad an expression to use, to say that the question which is here presented cannot be raised collaterally in any case.   Such a question was raised under the writ of *habeas corpus* in *Ex parte Snyder*, 64 Mo. 58. In that case, a person who had been convicted and sentenced to imprisonment by a supposed or pretended court, called the probate and criminal court of Cass county, applied to the supreme court for a *habeas corpus,* and was by the court discharged from

custody, on the ground that no such court as the probate and criminal court of Cass county had a legal existence ; that there could not be a *de facto* judge without a *de jure* court, and that the question could be raised on *habeas corpus*. But such a case is clearly distinguishable from a case where it is attempted to raise the question in a proceeding removed or appealed from the very court whose existence as a court is attacked. There was nothing in that proceeding, which from its nature presupposed or admitted the legal existence of the probate and criminal court of Cass county. On the contrary, that was an original and summary proceeding, commenced in the supreme court and directed against the sheriff of Cass county, as a ministerial officer holding a citizen in custody without any warrant of law. If he derived his authority from the warrant of a judge and a clerk pretending to constitute a court, which had no legal existence, he was simply holding the prisoner under void process, and acting as a mere trespasser; and the writ of *habeas corpus* is of such a summary nature that it may well be admitted that such a question could be raised, at least in the supreme court of the state, which would have jurisdiction to determine it by *quo warranto* in that proceeding. It is no authority for holding that it can be raised in such a proceeding as this. We accordingly overrule this assignment of error.

II.. The next objection, stated in the most general way, is that the state failed to show that the statute, known as the local-option law, had been regularly put in force in Greene county by a valid election, a proper canvass of the votes, and a publication thereof under the terms of that law. In deciding this question we shall adhere to the view, which we took of the same question in *State v. Searcy*, 39 Mo. App. 393, 407, where we used this language : ''The state assumed throughout the burden of alleging and proving the various steps by which the local-option law had been adopted in the

county. We hold that this is unnecessary. We hold that it is sufficient for the indictment to allege that the act of the legislature, approved April 5, 1887, commonly known as the local-option law, has been adopted, and is in force within the county (or city, or limits of the county outside of a city or cities of twenty-five hundred inhabitants, as the case may be), on the day on which the offense is charged. We also hold that the state makes good this allegation by producing a certified copy of the result of the election, as spread upon the records of the county court, in compliance with section 1 of the statute, and also by proving that subsequent publication of the result was made in compliance with the statute. A valid election in compliance with its terms is necessary to the adoption of the statute, and the record made by the county court of the result of the election is *prima facie* evidence of that fact. A publication of the result of the election, in compliance with the terms of the statute, is also necessary to put the law in force, and consequently such publication must be proved. We further hold that, after the state has thus shown, *prima facie*, that the statute had been adopted and put in force prior to the date of the offense, it is open to the accused to show the contrary by proving that any of the essential steps named by the statute have not been taken,—except as to those matters where the county court is required judicially to determine the existence of a fact, in which its record is conclusive,—as for instance in respect of the question, whether the petition for the election has been signed by the requisite number of qualified voters."

In the present case the state complied with this requirement, so far as its proof was concerned, by putting in evidence a certified copy of the result of the election, as spread upon the records of the county court, and also by proving that the subsequent publication of

the result had been made in compliance with the statute.

III.   But, directing attention more specially to the manner in which this question is now raised by the appellant, it is this:   That the statute relating to elections, in conformity with which by the terms of the local-option law this election was required to be held and the vote canvassed, contains this provision :   "The clerk of each county court shall, within five days after the close of each election, take to his assistance two justices of the peace of his county, or two judges of the county court, and examine and cast up the votes given to each candidate, and give to those having the highest number of votes certificates of election." R. S., sec. 4684. It is argued that this section has the effect of creating a canvassing board, to be composed of the clerk of the county court, and also of two justices of the peace or two county judges, whom he is required to call to his assistance ;   that this canvassing board is the official body created by law to canvass the votes, and cast up and declare the result ; that this board, acting collectively as a board, must make and sign a certificate of the result to be presented to the county court, and by the court spread upon its record ; that such a canvassing of the vote, and such a certificate of the result, concurred in, and signed, by the canvassing board, is necessary to the validity of any election under the local-option law; and hence that, as it nowhere appeared that the clerk called to his aid, in canvassing the votes in the present case, two justices of the peace or two county court judges, and as it does not appear that a certificate of the result by such a canvassing board was made, and presented to the county court, and spread upon its records, the election is of no validity.

The appellant refers us to two decisions of the Kansas City Court of Appeals, where this view, in substance, was held. *State v. Mackin*, 41 Mo. App. 99 ; *State v. Prather*, 41 Mo. App. 451.   The appellant also argues that there

is no conflict between the Kansas City Court of Appeals in these two cases, and our holding in *State v. Searcy*, *supra*. But we find that these holdings are in irreconcilable conflict with the view which we took in the case last named. The view which we took is founded upon what we understand to be the grammatical construction of the statute ( R. S., sec. 4684 ), and it is th's : *First.* That the *clerk* of the county court, within five days after the close of the election, takes to his assistance two justices of the peace, or two judges of the county court. *Second.* That the *clerk* then examines and casts up the votes given to each candidate. *Third.* That the *clerk* then gives to those having the highest number of votes certificates of election, or ( in its application to the local-option law ) makes a certificate of the election for the purpose of having it spread upon the records of the county court, as required by section 1 of that law. Undoubtedly, the intention of the statute is, that the two justices or judges called in by the clerk shall assist him in casting up the votes and ascertaining the result; otherwise the language of the statute, which requires him to take them to his assistance, would not receive its proper value. But we do not understand that the justices or county judges, called by the clerk to his aid, are required to join with him in certifying the result, or, in the case of an election for county offices, in signing the certificate to be given to the candidate having the highest number of votes. We further understand that it has not been the general practice in this state for the justices or the county judges, called to the aid of the clerk, to join with him in making this last named certificate.

The question does not appear ever to have been directly decided by the supreme court, but there are decisions of that court, the language of which conveys implications on both sides of the question. In *State ex rel. v. Harrison*, 38 Mo. 540, there is language implying that the duty of making the certificate is on the

clerk alone, and the same implication seems to be contained in the language of the court in *State ex rel. v. Steers*, 44 Mo. 223. But in *State ex rel. v. Garesché*, 65 Mo. 480, the language of the court contains the contrary implication ; and in the *Garesché case* a *mandamus* was directed both against the clerk and the two justices whom he had called to his aid in canvassing the votes ; but it was to compel them to count certain votes which had been rejected. In none of these cases was the question presented, which is now before us. The statute is obscure ; the question is not without difficulty, and the view of the Kansas City Court of Appeals is ably and persuasively stated by Judge GILL in giving the two opinions of that court already referred to ; but we rest our conclusion on the consideration, that there is no statute requiring any certificate of election to be made and signed by the whole canvassing board, and no statute relating to the local-option law, which requires any such certificate to be made and signed at all. We do not see how the validity of an election can be made to depend upon the formal execution of a document, which no statute requires to be executed at all.

In the present case the paper spread upon the records of the county court does not recite the manner in which the vote was canvassed, nor is it certified to, either by the clerk or by a canvassing board ; and it is consistent with the conclusion, that the act might have been performed by the clerk, under the eye of the county court judges while sitting as a court, as contended by the appellant, but for the fact that a court cannot, under the principles laid down by us in our former decision in the *Searcy case*, indulge in presumptions of wrong-acting, where presumptions of right-acting are equally consistent with what appears. Evidence was given by the state, through the mouth of the clerk of the county court of Greene county, that such a certificate of the result of their election had been made by him and filed in the archives of the

county court; and the deputy clerk of the county court of Greene county testified to the effect, that this certificate had been lost and could not be found. This fact shows the great inconvenience and public danger of the principle, for which the appellant here contends. There is no provision in the local-option law, or in any other statute which has been called to our attention, requiring the certificate which the county court clerk (or the county court clerk and the justices or judges, if the appellant's view be taken) makes of the result of the election to be spread *in hæc verba*, upon the records of the county court, there to be preserved as a permanent memorial of the fact. Section 1 of the local-option law (R. S., sec. 4598) only requires that the result of the election shall be entered upon the records of the county court, and that is shown to have been done in this case. It is not by virtue of an express provision of law with which we are acquainted, but only by analogy to the statute relating to elections for public officers (R. S., sec. 4684), that we assume in the *Searcy case* that such a certificate is required at all. As there is no statute requiring it to be spread *in hæc verba* upon the records of the county court, it appears that it may be as lawfully kept in the custody of the county court clerk among his office files, as any other paper may be so kept. If, then, the position of the appellant is correct, and if the validity of an election putting in force the local-option law is to be tried on the appellant's theory in every prosecution under that law, it follows that the permanent existence of the law is put to the hazard of the preservation of this single paper, and that the accidental loss of the paper, or the purloining of it by an interested person, may render it impossible to prove in any case, after such loss or purloining, that the law was properly enacted and put in force. This consideration satisfies us of the soundness of our conclusion in *State v. Searcy*, 39 Mo. App. 393.

The further argument of the appellant, that there must be an order of record of the county court, admitting this certificate to its record is not tenable, since it is presumed that the court orders to its record everything which there appears.

IV.   The circuit court refused to allow the defendant to show by way of defense to the merits that, although he had sold the half pint of alcohol as charged in the indictment, yet that he was a duly licensed druggist, and that he sold the alcohol for medicinal purposes and in good faith, although without any prescription by a physician.   In this ruling of the court there was no error.   The local-option law ( R. S., sec. 44605 ) contains this provision :   "Nor shall anything herein contained prevent licensed druggists or pharmacists from furnishing pure alcohol for medicinal, art, scientific and mechanical purposes."   The statute relating to druggists ( R. S., sec. 4621 ) makes it a misdemeanor for any druggist to sell or give away alcohol in less quantities than four gallons, except on a written prescription of a regularly registered and practicing physician.   In our opinion the two statutes are not in conflict, and the local-option law does not displace the druggist law, and the two are to be construed together *in pari materia.*  The local-option law does not interfere with the operation of the druggist law at all.   *Ex parte Swann,* 96 Mo.   44.   The provision from the local-option law above quoted is rather to be construed as referring to the provisions of the druggist law already in force, and to preserve in full operation those provisions.   We agree with the Kansas City Court of Appeals that the druggist law was designed to cover all the ground in relation to sales by druggists and pharmacists, without reference to other statutes.   *State v. Piper,* 41 Mo. App. 164.   It necessarily follows that a person indicted for a violation of the local-option law, who defends on the ground that he is a licensed druggist, and that he sold the liquor as such in his character as a druggist,

must show a state of facts which brings him within the provisions of the law relating to the sale of liquor by druggists,—in other words, where it is sold for medicinal purposes he must show a physician's prescription. *State v. Moore*, 16 S. W. Rep. 937.

It results, in our opinion, that the judgment of the circuit court of Christian county should be affirmed. We so order. But, as there is a conflict of opinion between the decision of this court in the present case, and the decision of the Kansas City Court of Appeals in *State v. Mackin*, 41 Mo. App. 99, and *State v. Prather*, 41 Mo. App. 451, as above stated, upon the question of the mode of canvassing the votes of an election under the local-option law and certifying the result, we must, under the constitutional mandate, certify this cause to the supreme court for final determination. It is so ordered. All the judges concur.