

# SUPREME COURT OF MISSOURI
# en banc

| | | |
|---|---|---|
| STATE OF MISSOURI ex rel. CARLOS D. ALSUP, | ) ) ) | *Opinion issued December 10, 2019* |
| Relator, | ) ) | |
| v. | ) ) | No. SC97427 |
| THE HONORABLE JAMES F. KANATZAR, | ) ) ) ) | |
| Respondent. | ) | |

### ORIGINAL PROCEEDING IN PROHIBITION

Israel Mariano ("Mariano"), a student at Independence Academy, filed a negligence suit against Relator, Carlos Alsup ("Alsup"), an in-school suspension teacher. Mariano sued Alsup in his individual capacity for the personal injuries Mariano sustained when Alsup physically restrained him and broke his arm. Alsup filed a motion for summary judgment, claiming he was entitled to official immunity, but the circuit court overruled the motion. Alsup now seeks a writ of prohibition barring the circuit court from taking any further action other than to vacate its order overruling Alsup's motion for summary judgment and to enter judgment for Alsup. This Court has the authority to

"issue and determine original remedial writs[,]" Mo. Const. art. V, § 4.1, and this Court's preliminary writ of prohibition is now made permanent.

## Background

On April 28, 2016, Mariano was reluctant to go to school and refused to get on the school bus at his home. Mariano's mother called Independence Academy to inform them that Mariano refused to get on the bus and that she would bring him to school in her own vehicle. When she arrived at Independence Academy, Mariano's mother physically struggled to get him into the school. Once inside the school, Mariano's mother turned him over to Alsup and another staff member, who took hold of him. In the course of physically restraining him, Alsup broke Mariano's arm. At the time of this incident, Alsup was employed as an in-school suspension teacher at Independence Academy, an alternative school operated by the Independence School District ("District").

By statute, school districts are required to adopt a written policy addressing the use of restrictive behavioral interventions. *See* § 160.263.2.[1] As a result, the District adopted District Board Policy 2770 ("Policy 2770"). Pursuant to Policy 2770, an in-school suspension teacher is permitted to physically restrain students in three situations: (1) "[i]n an emergency situation;"[2] (2) "[w]hen less restrictive measures [have] not effectively deescalated the situation;" and (3) when otherwise specified by various

---

[1] All statutory references are to RSMo 2016.

[2] Policy 2770 further defines "emergency situation" as "one in which a student's behavior poses a serious, probable threat of imminent physical harm to self or others or destruction of property."

types of plans.[3]  Policy 2770 also provides physical restraint shall "[o]nly be used for as long as necessary to resolve the actual risk of danger or harm that warranted the physical restraint."  And the school personnel using physical restraint shall "[u]se no more than the degree of force necessary to protect the student or other persons from imminent physical harm."  Further, Policy 2770 permits the school personnel using physical restraint to only "[u]se methods of restraint in which the personnel has received district approved training."[4]

In addition to the guidelines set forth in Policy 2770, the District also provides its employees with training through the Crisis Prevention Institute ("CPI").  Alsup attended this training program as required by his employment.  Generally, the CPI training program provides District employees with guidelines, strategies, and methods for deescalating emergency situations.  The program also provides training for multiple methods of physically restraining a student.[5]

Mariano filed suit alleging Alsup was negligent in physically restraining Mariano and seeking damages for his injuries.  Alsup filed two motions to dismiss, both of which

---

[3]  These plans include Individualized Education Plans; "Section 504 Plans" developed to support children with disabilities; or a "parentally agreed-upon-plan to address a student's behavior."

[4]  There is no allegation that Policy 2770 fails to comply with section 160.263.

[5]  For instance, the CPI training manual included four "Classroom Model diagrams," each of which depicted different methods school personnel may utilize if the need arises to physically restrain a student.  These methods include: the "Children's Control Position," which may be used to restrain "considerably smaller" individuals; the "Team Control Position," which may be used "to manage individuals who have become dangerous to themselves or others;" the "Transport Position," which may be used to safely move "an individual who is beginning to regain control;" and the "Interim Control Position," which may be used to "maintain control of both of the individual's arms, if necessary, for a short period of time."

were overruled. Alsup later filed a motion for summary judgment, arguing he was entitled to official immunity. The circuit court overruled Alsup's motion. Alsup sought a writ of prohibition in the court of appeals, which was denied, and now seeks the same relief in this Court.

**Analysis**

"'Immunity' connotes not only immunity from judgment but also immunity from suit." *State ex rel. Mo. Dep't of Agric. v. McHenry*, 687 S.W.2d 178, 181 (Mo. banc 1985). When a defendant is entitled to immunity as a matter of law, "prohibition is an appropriate remedy." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 444 (Mo. banc 1986).

Two types of immunity often are confused when suit is brought against a governmental official. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). Broadly speaking, sovereign immunity protects governmental entities from tort liability and can be invoked when a governmental official is sued only in his or her official capacity. *See id.* Official immunity, on the other hand, protects public officials sued in their individual capacities "from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Id.*[6]

At issue here is the doctrine of official immunity, which this Court has long held protects a public official from liability if that official acts within the course of his official

---

[6] Sovereign immunity originally was a matter of common law but now is codified in sections 537.600 through 537.650. *Southers*, 263 S.W.3d at 609. Official immunity remains a matter of common law alone. *Id.* at 610.

4

duties and without malice.[7] *Id.* at 610 & n.7 (citing *Reed v. Conway*, 20 Mo. 22, 52 (1854)). The purpose of this doctrine is to allow public officials to "make judgments affecting the public safety and welfare" without "[t]he fear of personal liability." *Green v. Denison,* 738 S.W.2d 861, 865 (Mo. banc 1987), *overruled on other grounds by Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 765 n.8 (Mo. banc 2006). This is because, "[i]f an officer is to be put in fear of financial loss at every exercise of his official functions, … the interest of the public will inevitably suffer …." *Smith v. Berryman*, 199 S.W. 165, 167 (Mo. banc 1917).

Indeed, "[c]ourts and legal commentators have long agreed that society's compelling interest in vigorous and effective administration of public affairs requires that the law protect those individuals who, in the face of imperfect information and limited resources, must daily exercise their best judgment in conducting the public's business." *Kanagawa v. State ex rel. Freeman*, 685 S.W.2d 831, 836 (Mo. banc 1985). Therefore, when a public official asserts the affirmative defense of official immunity, she should be afforded such immunity so long as she was acting within the scope of her authority and without malice. *Green v. Lebanon R-III Sch. Dist.*, 13 S.W.3d 278, 284 (Mo. banc 2000) ("Under the doctrine of official immunity, a public official is not liable to members of the public for negligence that is strictly related to the performance of discretionary duties.") (citing *Green,* 738 S.W.2d at 865).

---

[7] "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Twiehaus*, 706 S.W.2d at 447 (quotation marks omitted).

Courts applying the doctrine of official immunity must be cautious not to construe it "too narrowly lest they frustrate the need for relieving public servants of the threat of burdensome litigation." *Kanagawa*, 685 S.W.2d at 836 (quotation marks omitted). There is, however, a narrow exception to the application of the official immunity doctrine – i.e., when a public officer fails to perform a ***ministerial*** duty required of him by law, he may be personally liable for the damages caused. *Knox County. v. Hunolt*, 19 S.W. 628, 630 (Mo. 1892). This narrow exception, therefore, focuses on the nature of a ministerial act.

Generally, a ministerial act has long been defined as merely "clerical." *E.g.*, *McFaul v. Haley*, 65 S.W. 995, 998 (Mo. 1901). And this Court has noted that a ministerial duty compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials. *See, e.g., id.*; *Albright v. Fisher*, 64 S.W. 106, 110 (Mo. 1901). For more than a century, this Court has held that a ministerial or clerical duty is one in which a certain act is to be performed "upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to [the public official's] judgment or opinion concerning the propriety or impropriety of the act to be performed." *State ex rel. Forgrave v. Hill*, 198 S.W. 844, 846 (Mo. banc 1917) (quotation marks omitted). Thus, the central question is whether there is any room whatsoever for variation in when and how a particular task can be done. If so, that task – by definition – is not ministerial. *See, e.g., State ex rel. Clarke v. West*, 198 S.W. 1111, 1113 (Mo. banc 1917) (holding mandamus will not lie to direct "the particular action he will take in the matter" when law authorizes the officer to choose between alternatives).

The task of identifying ministerial acts that fall outside the protections of official immunity is similar to the task of identifying ministerial acts that a writ of mandamus will issue to compel an official to perform. *See State ex rel. Howser v. Oliver*, 22 S.W. 637, 639 (Mo. 1893) ("It is well settled that mandamus will lie against a public officer to compel the performance of a mere ministerial act …."). In fact, the test for whether a task is "ministerial" for purposes of a writ of mandamus is precisely the same as the test for whether that task is "ministerial" such that official immunity will not apply. *Compare Curtis v. Mo. Democratic Party*, 548 S.W.3d 909, 915 (Mo. banc 2018) ("A ministerial duty is a duty of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.") (quotation and emphasis omitted), *and State ex rel. Kan. City Power & Light Co. v. McBeth*, 322 S.W.3d 525, 531 (Mo. banc 2010) (same), *with Southers*, 263 S.W.3d at 610-11 ("A ministerial function … is one of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.") (quotation marks omitted), *and Davis*, 193 S.W.3d at 763 (same). Accordingly, if a writ of mandamus would not have been proper to compel an official to perform an act, it should follow that official immunity protects an official from liability for injuries arising from the performance of that act.

Mariano focuses almost exclusively on the portion of the test for clerical or ministerial duties that refers to "obedience to the mandate of legal authority." But such a focus has led to confusion in this area of the law and an erosion in the protections of official immunity. The fact that a statute or regulation may confer authority – or even a duty – to act in a given situation says nothing about whether the act authorized or compelled is the sort of ministerial or clerical act to which official immunity does not extend.[8] Thus, the relevant inquiry is not whether the law authorizes, regulates, or requires an action. Instead, it is whether the action itself is ministerial or clerical.[9] And,

---

[8] This Court's cases are replete with examples in which the authority or duty to act extends beyond actions that are merely ministerial or clerical. *See*, e.g., *Clarke*, 198 S.W. at 1113 (statutes requiring the county court to determine whether requested improvements are necessary for sanitary or agricultural purposes or would be of public utility did not impose a ministerial duty); *Mo. Dep't of Agric.*, 687 S.W.2d at 182-83 (statutes governing the Director of the Department of Agriculture's inspections, and subsequent conduct based on the result of an inspection, of licensed public warehouses did not impose a ministerial duty); *State ex rel. Howenstine v. Roper*, 155 S.W.3d 747, 754-55 (Mo. banc 2005) (a state regulation requiring a doctor to supervise services rendered at a clinic, pursuant to a "collaborative practice arrangement," did not impose a ministerial duty), *abrogated on other grounds by Southers,* 263 S.W.3d at 614 n.13; *Southers,* 263 S.W.3d 619-20 (statutes and department policies regarding a police officer's conduct during a vehicular pursuit did not impose a ministerial duty upon a police officer during a high-speed vehicle chase). Additionally, statutes conferring policymaking authority upon a public official do not impose a ministerial duty. *See, e.g., Dritt v. Snodgrass*, 66 Mo. 286-292 (1877); *Kanagawa*, 685 S.W.2d at 836; *State ex rel. Barthelette v. Sanders*, 756 S.W.2d 536, 539 (Mo. banc 1988); *Heins Implement Co. v. Mo. Highway & Transp. Comm'n*, 859 S.W.2d 681 (Mo. banc 1993), *abrogated on other grounds by Southers*, 263 S.W.3d at 614 n.13; *Charron v. Thompson*, 939 S.W.2d 885, 887 (Mo. banc 1996).

[9] This focus on whether a duty is ministerial dominates many areas of law, not just the doctrine of official immunity. *See, e.g., Bowen v. Hixon*, 45 Mo. 340, 342-43 (1870) (statute requiring the county clerk to count the votes of each candidate in the election and give the candidate with the highest number of votes a certificate of election imposed a ministerial duty); *State ex rel. Metcalf v. Garesche*, 65 Mo. 480, 487-88 (Mo. 1877) (statute requiring board of canvassers to certify the total number of votes provided by the county clerk to the Secretary of State imposed a ministerial duty); *Forgrave*, 198 S.W. at 847 (statute requiring a judge to sign a warrant after the claim for an officer's salary had been audited and a warrant ordered imposed a ministerial duty); *State ex rel. Chi., R. I. & P. Ry. Co. v. Becker*, 41 S.W.2d 188, 188-89 (Mo. banc 1931) (statute requiring the secretary of state to renew a business license upon a company's payment of taxes

8

even when a clerical or ministerial act appears to be authorized or required by statute, official immunity will still apply if the official retains authority to decide when and how that act is to be done. *See, e.g.*, *Howser*, 22 S.W. at 639; *Green*, 13 S.W.3d at 285; *State ex rel. Metcalf v. Garesche*, 65 Mo. 480, 489 (1877). As a result, even though a statute might require a public official to act "fairly," "competently," "safely," or "reasonably" in a given situation, the performance of that action will fall within official immunity because what constitutes fair, competent, safe, or reasonable may differ from time to time, place to place, and official to official.

Turning to the present case, Alsup's motion for summary judgment should have been sustained because there is no genuine issue of material fact and he is entitled to official immunity as a matter of law. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993). Alsup, of course, bears the burden of proving this affirmative defense, *Warren v. Paragon Techs. Grp., Inc.*, 950 S.W.2d 844, 846 (Mo. banc 1997), and he established as a matter of law that he was a public official and that the actions challenged in Mariano's petition were within the scope of Alsup's duties and were performed without malice. *Reed,* 20 Mo. at 52.

As an initial matter, Mariano does not dispute that Alsup is a public official. Alsup is an employee of the school district, a governmental entity. *Dritt,* 66 Mo. at 292. Similarly, Alsup's actions in restraining Mariano were within the scope of Alsup's

---

(and other requirements) imposed a ministerial duty); *State ex rel. City of St. Louis v. Priest*, 152 S.W.2d 109, 112 (Mo. 1941) (statute requiring the clerk of the court to issue an execution upon a judgment when requested to do so by the judgment holder imposed a ministerial duty).

9

official authority as an in-school suspension teacher. Finally, there is no allegation or argument that Alsup acted with malice toward Mariano. Therefore, absent anything further, Alsup is entitled to official immunity.

Mariano, however, claims that the narrow, "ministerial act" exception to official immunity applies. Specifically, he concedes that Alsup's duty to determine *whether* to physically restrain Mariano was not ministerial but, he argues, once that decision was made, Alsup's duty under Policy 2770 regarding *how* to restrain Mariano was a ministerial duty. Mariano relies on the deposition testimony of Dr. James Monk, who testified that Alsup used a district-approved method of restraint known as the "Team Control Position" on Mariano, but Alsup failed to use that restraint properly.[10] As a result, Mariano argues Alsup's duty to conduct the physical restraint in a legally mandated manner was a ministerial duty and Alsup is not entitled to official immunity.

Determining the need to restrain a school-age child – let alone determining and employing the proper means and manner to accomplish that restraint – are about as far from the sort of clerical or ministerial acts that can be compelled by a writ of mandamus as one can imagine. By the same token, therefore, they are equally as far from the sort of

---

[10] Dr. Monk's testimony that Alsup should have performed the "Team Control Position" in a manner other than he did actually undercuts Mariano's argument that Alsup was engaged in a ministerial task. *See Howser*, 22 S.W. at 639 ("If, then, the duties of the defendant … required the exercise of any []special discretion or judgment, and he acted in the premises according to his judgment, though erroneously, the writ was improvidently issued."). Indeed, the very purpose of official immunity is to protect a public official when he makes a mistake during the performance of tasks within the scope of his official authority. *State ex rel. West v. Diemer*, 164 S.W. 517, 522 (Mo. 1914) (Unless the public official's conduct "went beyond a mere honest mistake or error of judgment and acted maliciously, fraudulently, corruptly, or wantonly and arbitrarily, there can be no recovery.").

ministerial or clerical acts that fall outside the broad scope of official immunity. Alsup had no clear and unequivocal duty to restrain Mariano, let alone a clear and unequivocal duty to use a particular restraint in a particular way. To the contrary, Policy 2770 permitted Alsup to determine whether and when it was necessary to use physical restraint on a student. Policy 2770 also provided Alsup the authority to use physical restraint to the degree of force necessary, for as long as necessary, to protect Mariano and others nearby. If five in-school suspension teachers had been confronted with a child acting the way Mariano was acting, all five could have acted differently and yet each could have remained in compliance with Policy 2770. This is the very antithesis of a clerical or ministerial duty.

Moreover, the portion of Policy 2770 restricting Alsup's use of physical restraint to "methods of restraint in which the personnel has received district approved training" does not turn the task of student restraint into a clerical or ministerial one. The CPI training included several techniques for physically restraining students, and Alsup was authorized to select the one he deemed appropriate, employ it with the amount of force he deemed necessary, and continue it for as long as he deemed proper. Nothing in Policy 2770 imposed a clerical or ministerial duty on Alsup under these circumstances. *Cf. Clarke*, 198 S.W. at 1113 (holding "where an officer … has considered and determined what his course of action is to be … his action is not subject to review or control by mandamus") (quotation marks omitted).

In *Green*, this Court addressed a similar, though plainly not identical, situation in which police officers were confronted with an armed individual. *Green*, 738 S.W.2d at

11

865.  In holding the officers were entitled to official immunity, this Court explained:  "It is hard to imagine a setting more demanding of judgment than one in which line officers … confront a person who has recently flourished a gun."  *Id*.  Situations "teeming with the necessity for quick judgment calls" are exactly the types of decisions that "official immunity was established to protect public officials from."  *Id*. at 866.  "This is so even though hindsight may demonstrate errors in judgment which might be branded as negligent by qualified evaluators."  *Id*.

Here, like the officers in *Green*, Alsup was required to make a rapid series of difficult decisions concerning whether and how to restrain Mariano for the safety of that child and everyone else nearby.  Alsup had the authority and, perhaps, even the duty to act, but when, where, and how he was to act were open to him.  Official immunity was created to protect him from claims he acted negligently under such circumstances, and the narrow exception to that immunity for clerical or ministerial acts does not come close to applying.

## Conclusion

For the reasons set forth above, this Court's preliminary writ of prohibition is made permanent.

_____
Paul C. Wilson, Judge

All concur.